John E. McLAUGHLIN, Plaintiff,

v.

GREAT LAKES DREDGE & DOCK COMPANY, Defendant.

No. C77–634.

United States District Court,
N. D. Ohio, E. D.

Sept. 3, 1980.

---

Eugene Sidney Bayer, Cleveland, Ohio, for plaintiff.

Anthony J. DiVenere, Burke, Haber & Berick, Cleveland, Ohio, for defendant.

## MEMORANDUM

BEN C. GREEN, Senior District Judge:

Plaintiff, John E. McLaughlin, is a white male who alleges that the defendant, Great

Lakes Dredge & Dock Company (Great Lakes) has discriminated against him on the basis of his race in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Fifth and Fourteenth Amendments to the Constitution. Plaintiff alleges that he had an expectation of renewed employment with defendant, but that due to the fact that defendant adopted an affirmative action plan he was not recalled to his crane operator job and that a less–qualified black male received the job instead. The complaint seeks a declaratory judgment that the affirmative action plan is unlawful and an order requiring defendant "to reinstate plaintiff to the job of engineer and compensate him for wage differential since his demotion."

Great Lakes filed a third–party complaint against the "United States Army Corps of Engineers." The third–party complaint alleged in part that Great Lakes entered into a contract with the third–party defendant on September 15, 1975 and that:

5) As a federal contractor, third party plaintiff is required to comply with all the provisions of Executive Order No. 11246 of September 24, 1965, as amended by Executive Order No. 11375 of October 13, 1967, and the rules, regulations and relevant orders of the Secretary of Labor, which among other things require that all federal contractors submit and implement affirmative action plans.

6) Furthermore, the specifications for the aforementioned contract with the Corps of Engineers require compliance with the local affirmative action plan. This plan required minority man–power utilization of 17.0% to 18.8% for the job classification held by plaintiff John E. McLaughlin.

The third–party complaint further alleged that if plaintiff was replaced by a minority worker and that if such replacement constituted discrimination on the basis of race then such discrimination was "proximately caused as the result of third party plaintiff's compliance with the provisions of the applicable Executive Orders," and the provisions of the contract between defendant and the Army Corps of Engineers. Great Lakes sought indemnification from the government in the event it was found liable to plaintiff.

The government moved to dismiss the third–party complaint or in the alternative for summary judgment.

On April 2, 1979 this Court entered a memorandum and order granting the government's motion for summary judgment.

On June 18, 1979 Great Lakes filed a motion for leave to file a second amended third–party complaint.

On November 6, 1979 this Court held that there were no material differences between the first and second amended third–party complaints and the Court denied defendant's motion for leave to file a second amended third–party complaint.

Now before the Court is defendant's motion for summary judgment against the plaintiff and the plaintiff's brief in opposition.

On a motion for summary judgment the moving party bears the burden of showing that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure.

After an examination of the affidavits, exhibits, and depositions submitted by the parties the Court finds the following to be the version of facts most favorable to plaintiff, the non–moving party.

Sometime prior to November, 1974 John E. McLaughlin, who was by trade an operating engineer and a member of International Union of Operating Engineers Local 18, became unemployed. Mr. McLaughlin informed his union that he was out of work and the union told him to report for work at Great Lakes. Plaintiff went to work as an engineer on a dredging derrick for Great Lakes beginning on November 7, 1974. The rest of the crew consisted of an operator, an oiler, and two deckhands. On December 27, 1974 dredging was completed, and plaintiff was once again unemployed.

Mr. McLaughlin put in his out–of–work card with the union. In the spring of 1975 he was again sent to work for Great Lakes. Mr. McLaughlin stated at his deposition that he understood Great Lakes specifically requested the union to have him fill the opening.

A pattern of periodic employment and unemployment with Great Lakes continued over the next several months. Mr. McLaughlin had his out–of–work card on file with the union for the 1976 season. However, when the 1976 season opened Mr. McLaughlin did not return to Great Lakes. The individual who was hired for the job Mr. McLaughlin had performed the previous year was black.

On June 23, 1976 McLaughlin filed a charge with the Ohio Civil Rights Commission alleging that Great Lakes discriminated against him on the basis of his race when they failed to rehire him on March 26, 1976 when spring recall began.[1] Plaintiff stated at his deposition that his union steward informed him that due to a provision in the contract between Great Lakes and the government plaintiff was being replaced by a black engineer.

In fact, there was a contract between Great Lakes and the Army Corps of Engineers for maintenance and dredging of the Cuyahoga and Old Rivers in the Cleveland Harbor and one of the provisions in this contract required Great Lakes to "comply with all provisions of Executive Order No. 11246." Executive Order No. 11246 requires all federal contractors to take:

> . . . affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin. (As amended by Executive Order No. 11375).

In considering this action in the context of defendant's motion the Court must assume as a predicate that the black engineer who was hired by Great Lakes in 1976 obtained his position by virtue of the requirements imposed upon Great Lakes by Executive Order No. 11246.

As a starting point in the analysis of this reverse discrimination case the Court notes the difficulty in reconciling the language of Title VII, whose central purpose was to eliminate invidious racial discrimination in employment, with an Executive Order which may require an employer to take race into consideration as a factor in making employment decisions. However, the recent case of *United Steelworkers of America, AFL–CIO–CLC v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979) makes the problem less difficult, since in that case the Court resolved the question as to whether or not "Title VII forbids private employers . . . from voluntarily agreeing upon bona fide affirmative action plans that accord racial preferences in the manner and for the purpose provided in the Kaiser–USWA plan." See also *Detroit Police Officers v. Young*, 608 F.2d 671 (CA 6, 1979). A majority of the Supreme Court held that Title VII did not prohibit an employer from voluntarily adopting an affirmative action plan which met certain requirements.

The dispute in *Weber* centered around an affirmative action plan contained in a collective bargaining agreement between Kaiser Aluminum & Chemical Corporation and the Steelworker's union. The affirmative action plan's purpose was to eliminate racial imbalances in the corporation's predominantly white craft work force. The implementation of the affirmative action plan involved setting black craft hiring goals for each plant equal to the percentage of blacks in the local labor forces and then establishing a training program to teach unskilled production workers the skills necessary to become craft workers. Half of the openings in the training program were reserved for blacks.

Brian Weber, the plaintiff, was a white production worker at one of the plants who

---

[1]. On January 3, 1977 the Ohio Civil Rights Commission found "[n]o probable cause to credit the allegations of the charge."

sought admission to the training program. Although Weber had more seniority than at least one of the blacks selected for the training program, his application was rejected. Weber then instituted a class action alleging violations of Title VII.

Mr. Justice Brennan, joined by four other Justices, wrote the opinion for the Court. He began by rejecting Weber's argument that "Congress intended in Title VII to prohibit all race–conscious affirmative action plans." *Id.,* at 201, 99 S.Ct. at 2726. After examining the legislative history of Title VII he concluded that the statute did not prohibit all voluntary, race–conscious, affirmative action efforts on the part of employers and unions.

Next, the Court went on to point out why the particular affirmative action plan in that case was a permissible affirmative action plan.

. . . The purposes of the plan mirror those of [Title VII]. Both were designed to break down old patterns of racial segregation and hierarchy. Both were structured to "open employment opportunities for Negroes in occupations which have been traditionally closed to them." (citation omitted).

At the same time the plan does not unnecessarily trammel the interests of the white employees. The plan does not require the discharge of white workers and their replacement with new black hires. (citation omitted). Nor does the plan create an absolute bar to the advancement of white employees; half of those trained in the program will be white. Moreover, the plan is a temporary measure; it is not intended to maintain racial balance, but simply to eliminate a manifest racial imbalance. *Id.,* at 208, 99 S.Ct. at 2730.

Thus, the first issue in this action is whether the Great Lakes affirmative action plan comes within the criteria set forth in the *Weber* case.

■ In the Court's opinion the Great Lakes' affirmative action plan was adopted voluntarily. Great Lakes was not required to bid on the contract with the Army Corps of Engineers which contained the requirement that the federal contractor comply with Executive Order No. 11246. Great Lakes voluntarily bid on this contract, which in turn required them to adopt an affirmative action plan.

■ With regard to the requirement that the affirmative action plan mirror the purposes of Title VII the Court finds that, as is the case with Title VII, the purpose of the Great Lakes' affirmative action plan is to "break down old patterns of racial segregation and hierarchy." *Weber, supra,* at 208, 99 S.Ct. at 2730; see *Contractors Association of Eastern Pennsylvania v. Secretary of Labor,* 442 F.2d 159, 173 (CA 3, 1971). Both Title VII and Executive Order No. 11246 were promulgated "to open employment opportunities for Negroes in [areas] which have been traditionally closed to them." *Weber, supra,* 443 U.S. at 203, 99 S.Ct. at 2728. The *Weber* Court at page 198, 99 S.Ct. at 2725, took judicial notice of the fact that blacks were traditionally excluded from craft unions. An affirmative action plan designed to correct this past discrimination mirrors the purpose of Title VII.

■ Nor do we find that this affirmative action plan "unnecessarily trammels the interests of white employees." The plan requires that 17% of the employees in plaintiff's job classification be minorities. There is no requirement that whites be fired and there is no absolute bar to the advancement of white employees.

■ Regarding the requirement that the plan be temporary, the Court finds that the affirmative action was adopted as part of the defendant's contract with the government and that it can be assumed that once any racial imbalance is eliminated the plan will be dropped. *Tangren v. Wackenhut Services, Inc.,* 480 F.Supp. 539, 544 (D.Nev., 1979).

Plaintiff argues that the *Weber* rationale is inapplicable to this case since Mr. Weber was merely denied a promotion whereas plaintiff alleges that in the present case that he was denied continued employment; tantamount to discharge from employment.

As an abstract proposition of law, the Court agrees with plaintiff that an affirmative action plan which required the discharge of white employees in favor of minority workers would not come within the reach of *Weber.* See, 443 U.S. 193, at p. 208, 99 S.Ct. at p. 2730. However, the Court finds that there is no genuine issue of material fact as to plaintiff's status as an employee of Great Lakes. At the time the alleged act of discrimination took place plaintiff was not an employee of Great Lakes, nor did he have any reasonable expectation of renewed employment.

The record is clear that Mr. McLaughlin's employment with Great Lakes was seasonal and temporary. He obtained his job with Great Lakes through the union hiring hall. There was never any contractual relationship between plaintiff and Great Lakes binding one to the other. Great Lakes was legally free to hire anyone it saw fit and Mr. McLaughlin was free to accept work with other companies when assigned through the hiring hall, and he did so on occasion.

Based on his deposition testimony, plaintiff's claim of an expectancy of employment in the spring of 1976 was based on a casual remark made to him when he stopped working at the end of the previous season that he would be back in the spring. That remark was made by another employee who had no authority to bind Great Lakes. Even assuming that it had been made by a management level employee of Great Lakes it would not have created a legal obligation to rehire plaintiff.

The Court, therefore, finds that the *Weber* decision is controlling herein, and that plaintiff has no claim against defendant based upon Title VII of the Civil Rights Act of 1964.

The remaining issue is whether defendant is also entitled to summary judgment on plaintiff's constitutional claims. Under the Fifth and Fourteenth Amendments to the United States Constitution the government (both federal and state) is prohibited from arbitrarily denying any citizen equal rights under the law. In order to state a constitutional claim there must be governmental action involved. In this action the Court's order of April 2, 1979 granting the government's motion for summary judgment effectively precludes any claim incorporating the element of governmental involvement. *See, Detroit Police Officers Association v. Young, supra.*

It being the Court's conclusion that there are no genuine issues of material fact as to any of the claims advanced in plaintiff's complaint and that as a matter of law defendant is entitled to summary judgment on those claims, final judgment will be entered in defendant's favor dismissing plaintiff's complaint.