**KIPP**

v.

**LTV AEROSPACE & DEFENSE.**

**No. CA 3–91–2792–R.**

United States District Court,
N.D. Texas,
Dallas Division.

March 8, 1993.

STATEMENT OF CASE

BUCHMEYER, District Judge:

This case is before the Court on (1) the cross motions for partial summary judgment of Plaintiff Frank Kipp and Defendants LTV Corporation and LTV Aerospace and Defense, Inc. ("the LTV Defendants") and (2) the Motion for Summary Judgment of Defendant Alexander Proudfoot Company ("Proudfoot"). For the following reasons, this Court DENIES Plaintiff's notion for Partial Summary Judgment, Grants the LTV Defendants' Notion for Partial Summary Judgment, and Grants Proudfoot's Motion for Summary Judgment.

1. Fed.R.Civ.P. 56(e).

2. *Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633, 640 (5th Cir.1985).

3. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);

**Background**

Plaintiff was the Vice–President of LTV. Aerospace and Defense, Inc. ("LTVAD"). In February 1990, Proudfoot entered into a consulting agreement with LTVAD to determine ways of improving LTVAD's operations. LTVAD performed work as a contractor for the United States Department of Defense (DoD). DoD regulations required LTVAD to implement a drug-testing program for its employees. In September 1990, LTVAD fired Plaintiff for refusing to take a drug test it had implemented according to DoD regulations. Plaintiff brings Claims against the LTV Defendants for constitutional violations, wrongful discharge, defamation, and intentional or negligent infliction of emotional distress. The LTV Defendants seek summary judgment on all but Plaintiff's claims for wrongful discharge and defamation. Plaintiff brings claims against Defendant Proudfoot for tortious interference with contractual relations, defamation, and intentional or negligent infliction of emotional distress.

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law.[1] All reasonable doubts and inferences must be decided in the light most favorable to the party opposing the motion.[2] Indeed, as long as there appears to be some evidentiary support for the disputed allegations, this Court must deny the motion.[3] Finally, a summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves[.]"[4]

**I. The LTV Defendants**

**A. Constitutional Claims**

■ The LTV Defendants contend that they were acting in a private capacity when

*Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir.1981) (*en banc*).

4. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

they instituted their drug-testing program. Kipp argues that the government, through the DoD, required the LTV Defendants to test their employees for drugs. Therefore, Kipp asserts, the federal government actually was responsible for conducting the unreasonable search and seizure.

■■■ The Fourth Amendment does not apply to private parties who conduct unreasonable searches and seizures.[5] However, if the private party is acting as an instrument or agent of the government, the Fourth Amendment does apply.[6] The degree of the government's participation in the private party's activity, in light of all the circumstances, determines whether a private party was acting as an agent of the government.[7]

Kipp cites the Supreme Court decision of *Skinner v. Railway Executives' Association* as support for his conclusion that the government acted through the LTV Defendants. In *Skinner,* the Secretary of Transportation, under its statutory authority, promulgated regulations requiring railroads to administer blood and urine tests of their employees following accidents or violations of safety rules. The Court found that the Fourth Amendment was applicable because the federal government, in its sovereign authority, compelled the railroads to obey the regulations and because the federal government was highly involved in the railroads' testing of their employees.[8]

*Skinner* is distinguishable from the case at bar. Unlike *Skinner,* the case before this Court involves the government acting not in its sovereign capacity but in its capacity as a party to a contract with a private party. This Court finds that the LTV Defendants were not acting as the instruments of the government when they instituted their drug-

testing program.[9] The federal government did not require them to bid for defense contracts; they freely entered into these defense contracts.[10] The LTV Defendants were required to implement a drug-testing program as a condition of the contracts only after the government had awarded them the contracts. The Fourth Amendment simply does not apply to this private conduct of the LTV Defendants.

Plaintiff's federal constitutional claim for invasion of privacy is merely a restatement of his Fourth Amendment search and seizure claim. The Supreme Court has held that the collection and testing of a urine sample intrudes upon a person's reasonable expectations of privacy and that this kind of drug-testing is considered to be a "search" for purposes of the Fourth Amendment.[11] However, because this Court has determined that the LTV Defendants were not acting as instruments of the federal government when they conducted their drug-testing program, the Fourth Amendment is inapplicable and Plaintiff's invasion of privacy claim must fail.

### B. *Emotional Distress*

The LTV Defendants also seek summary judgment on Plaintiff's claim for intentional or negligent infliction of emotional distress. The LTV Defendants argue that their conduct does not meet the "outrageous and extreme" element required to prove a claim for intentional infliction of emotional distress. The LTV Defendants also contend that Texas law does not recognize a claim for negligent infliction of emotional distress.

■■■ To prove a claim for intentional infliction of emotional distress, Texas law requires a plaintiff to establish four elements: (1) that

---

5. *Skinner v. Railway Labor Executives' Ass'n,* [111 LC ¶ 11,001] 489 U.S. 602, 614, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989).

6. *Id.*

7. *Id.*

8. *Id.* at 614–15, 109 S.Ct. at 1411–12.

9. *See, e.g., McLaughlin v. Great Lakes Dredge & Docks Co.,* 495 F.Supp. 857, 861 (N.D.Ohio 1980).

10. Plaintiff admits that:

It is obvious that these drug testing procedures were implemented pursuant to government regulations and specific requirements of government contracts to which LTV *freely entered* and enjoyed the benefits therefrom.

Plaintiff's Brief in Support of Plaintiff's Notion for Partial Summary Judgment at 7 (emphasis added).

11. *Skinner,* 489 U.S. at 617, 109 S.Ct. at 1413.

the defendant acted intentionally or recklessly; (2) that the conduct was "extreme and outrageous;" (3) that the defendant's conduct caused the plaintiff emotional distress; and (4) that the emotional distress suffered by the plaintiff was severe.[12]

Texas courts have found liability for "extreme and outrageous" behavior:

> only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case in which outrageous conduct is found is one in which the recitation of the facts to the average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"[13]

■ However, the Fifth Circuit has held that under Texas law the broad range of conduct encompassing mere employment disputes cannot support a claim for intentional infliction of emotional distress.[14] Ordinary employment disputes do not rise to the level of "extreme and outrageous" behavior because an employer's proper management of its business necessarily includes its ability to supervise, review, criticize, demote, transfer, and discipline employees.[15] Similarly, an employer is not liable for exercising its legal right to terminate an employee, even if the employer realizes that the employee will suffer emotional distress as a result of the termination.[16] The Fifth Circuit has said that even though conduct occurring within the

employment setting often rises to the level of illegality, it is not the kind of conduct that constitutes "extreme and outrageous" behavior "except in the most unusual cases."[17] Therefore, this Court must find that some conduct of the LTV Defendants takes this case "beyond the realm of an ordinary employment dispute and into the realm of an outrageous one."[18]

■ Plaintiff's claim for infliction of emotional distress is based on allegations that the LTV Defendants (1) wrongfully terminated him and (2) told customers that he was fired for reasons suggesting that he had a drug problem. Because this Court finds that Kipp was an at-will employee, the LTV Defendants are not liable for any emotional distress that may have resulted from their termination of him. Texas common law holds that, in an employment relationship of unlimited duration, an employer or employee may terminate the relationship at will and without cause.[19] However, a plaintiff who can prove the existence of an employment contract may overcome the harsh application of the at-will doctrine.[20] The plaintiff bears the burden of proving that he and his employer had a contract specifically providing for modification of the employment-at-will relationship.[21] The LTV Defendants have presented unrefuted evidence that Kipp did not have any written employment contract.[22] This Court also finds that the LTV Key Employee Extension Plan ("the Plan") did not modify Kipp's employment-at-will status,

**12.** *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1142 (5th Cir.1991) (*citing Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir.1989) (*quoting Tidelands Auto. Club v. Walters*, 699 S.W.2d 939, 942 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.))).

**13.** *Horton v. Montgomery Ward & Co.*, 827 S.W.2d 361, 369 (Tex.App.—San Antonio 1992, writ denied) (quoting Restatement (Second) of Torts § 46 cmt d (1965)).

**14.** *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, [122 LC ¶ 57,012] 965 F.2d 31, 33 (5th Cir.1992); *Wilson*, 939 F.2d at 1143; *Dean*, 885 F.2d at 307.

**15.** *See Johnson*, 965 F.2d at 34.

**16.** *Id.*

**17.** *Wilson*, 939 F.2d at 1143 (emphasis in original).

**18.** *Dean*, 885 F.2d at 307.

**19.** *East Line & R. R.R. v. Scott*, 72 Tex. 70, 75, 10 S.W. 99, 102 (1888). *See Sabine Pilot Serv., Inc. v. Hauck*, [102 LC ¶ 55,493] 687 S.W.2d 733, 734 (Tex.1985).

**20.** *See Aiello v. United Air Lines, Inc.*, [107 LC ¶ 55,787] 818 F.2d 1196, 1198 (5th Cir.1987).

**21.** *Stiver v. Texas Instruments, Inc.*, [109 LC ¶ 55,915] 750 S.W.2d 843, 846 (Tex.App.—Houston 1988, no writ).

**22.** Kipp Deposition Vol. I at 68, 144 (Oct. 28, 1991).

particularly in light of specific language in the Plan that states that:

> The establishment of the Plan shall not be construed as conferring any legal rights upon any Key Employee or other person for a continuation of employment, nor shall it interfere with the rights of the Corporation to discharge any Key Employee and to treat him without regard to the effect which such treatment might have upon him as a Member of the Plan.[23]

Furthermore, Plaintiff's termination does not fit within any of the statutory or common law exceptions to the at-will doctrine.[24] Plaintiff has not raised a question of fact about the issue of his employment status. Consequently, the LTV Defendants could, without fear of liability for the emotional distress that might result, exercise their legal right to terminate Kipp without cause and at will.

 This Court also finds that the LTV Defendants' allegedly suggesting to customers that Kipp had a drug problem does not rise to the level of "extreme and outrageous" behavior. In *Diamond Shamrock Refining v. Mendez*,[25] an employee who was fired for stealing claimed that his employer intentionally inflicted emotional distress by falsely portraying him in the community as a thief. The Texas Supreme Court found that the employer's conduct was not sufficiently "extreme and outrageous" to raise a fact issue. The *Diamond Shamrock* court concluded that:

> [T]here would be little left of the employment-at-will doctrine if an employer's public statement of the reason for termination was, so long as the employee disputed that reason, in and of itself some evidence that a tort of intentional infliction of emotional distress had been committed.[26]

This Court agrees with the *Diamond Shamrock* court and holds that Plaintiff's allegation that the LTV Defendants suggested to others that Kipp had a drug problem does not rise to the level of "extreme and outrageous" behavior.

 Finally, this Court finds that the Texas Supreme Court's decision in *Boyles v. Keri*[27] eliminates any lingering doubt over whether Texas law recognizes the tort of negligent infliction of emotional distress. *Boyles* holds that there is no such tort in Texas.[28] Therefore, Plaintiff's alternative claim against the LTV Defendants for negligent infliction of emotional distress must fail.

## II. Proudfoot

### A. Tortious Interference with Employment Relations

 Plaintiff contends that Proudfoot caused the LTV Defendants to fire Kipp. Plaintiff alleges that because he disagreed with some of Proudfoot's recommendations to LTVAD, Proudfoot wanted to remove him from his position of influence. Plaintiff claims that Proudfoot assisted the LTV Defendants in targeting Kipp for drug-testing, which the LTV Defendants knew Kipp would refuse.

 Proudfoot admits that it had differences of opinion with Kipp about the means of increasing staffing levels in the assembly area[29] and felt that Kipp was exerting his influence over and taking responsibility away from other people in making manufacturing

**23.** LTV Key Employee Extension Plan § 9.01 (attached to Kipp Deposition Vol. I).

**24.** *See Pease v. Pakhoed Corp.*, [124 LC ¶ 57,224] 980 F.2d 995, 1000 (5th Cir.1993) (*citing Sabine Pilot Serv. Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985), for the proposition that an employer's discharge of an employee for the sole reason that he refused to perform an act that carries criminal penalties is the narrow exception to Texas's employment-at-will doctrine); *Jennings v. Minco Technology Labs, Inc.*, [119 LC ¶ 56,735] 765 S.W.2d 497, 500–02 (Tex.App.—Austin 1989, writ denied) (refusing to expand *Sabine's* narrow exception to the at-will doctrine to include the termination of an employee for refusing to submit to drug-testing).

**25.** [123 LC ¶ 57,149] 844 S.W.2d 198 (Tex.1992).

**26.** *Id.* at 202.

**27.** 855 S.W.2d 593 (Tex.1993).

**28.** *Id.* at 594–600.

**29.** Frank Deposition at 15–16, 30 (Apr. 29, 1992) (Proudfoot Ex. C & Kipp Ex. 1).

decisions.[30] A factual dispute exists over whether Proudfoot wanted Kipp fired. However, this dispute is immaterial because Proudfoot prevails on its affirmative defense of legal justification or excuse. The defense of legal justification or excuse permits one to interfere with another's contract "if it is done in a bona fide exercise of his own rights; or if he has an equal or superior right in the subject matter to that of the other party."[31] Proudfoot's consulting agreement with LTVAD specifically stated that LTVAD hired Proudfoot to:

> [p]rovide services to review LTV Aircraft Products Group's operations to determine ways and means of improving service, management control, systems, training, supervisory effectiveness and cost reductions. Consultant shall report to and take direction from [the President of LTVAD].[32]

This Court finds that Proudfoot's consulting agreement provided Proudfoot with the contractual right to interfere, its interference with Kipp was a bone fide exercise of its rights under the consulting agreement, and it had superior contractual rights over Kipp.

Plaintiff contends that Proudfoot's description and characterization of him suggest that it may not have exercised its rights under the consulting agreement in a legitimate manner. One of Proudfoot's consultants referred to Kipp in an internal report as a "dragon," a term used to indicate that Kipp was not in agreement with Proudfoot's recommendations about staffing levels on the assembly floor.[33] Plaintiff asserts, without any evidentiary support, that the term "dragon" means "a person who was a problem or troublemaker and who should be limited in employment, if not removed."[34] Assuming Kipp could support his definition of the term "dragon," this Court would still find that Proudfoot was acting legitimately and within the broad scope of its consulting agreement. Proudfoot's characterization of Kipp is simply its conclusion that he was hindering efforts to implement ways of improving overall operations. Proudfoot legitimately exercised its rights under the terms of the consulting agreement. Furthermore, the consulting agreement granted Proudfoot superior contractual rights over Kipp, an at-will employee. Accordingly, this Court refuses to find, as a matter of law, any illicit motive behind Proudfoot's characterization of Kipp as a "dragon" and instead holds that the consulting agreement provided Proudfoot with a privilege to interfere in Plaintiff's contractual relations.

## B. Defamation

Proudfoot claims that, because of its consulting agreement with the LTV Defendants, it had a conditional privilege to make defamatory statements about Kipp to the LTV Defendants. Proudfoot contends that Plaintiff does not provide sufficient evidence of actual malice to overcome its conditional privilege. Plaintiff claims that the evidence raises a question of fact as to whether Proudfoot acted with actual malice.

Texas law defines a conditional privilege for a speaker as "communications made in good faith on subject matter in which the author has an interest or with reference to which he has a duty to perform to another person having a corresponding interest or duty."[35] Once the defendant shows the existence of a conditional privilege, the plaintiff bears the burden of overcoming the privilege by showing the existence of actual malice.[36] However, when the defendant moves for summary judgment, he has the burden of proving the absence of mal-

---

30. *Id.* at 18; *Callaway Deposition* at 27 (Mar. 31, 1992) (Proudfoot Ex. B).

31. *Sterner v. Marathon Oil Co.*, [117 LC ¶ 56,521] 767 S.W.2d 686, 691 (Tex.1989).

32. Consulting Agreement at 1 (Ex. 1 to Callaway Deposition (Mar. 31, 1992)) (Proudfoot Ex. B).

33. Frank Deposition at 30 (Apr. 29, 1992) (Kipp Ex. 1).

34. *Kipp's Response and Brief in Opposition* at 3.

35. *Houston v. Grocers Supply Co.*, 625 S.W.2d 798, 800 (Tex.App.—Houston 1981).

36. *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 900 (Tex.1970).

ice.[37] Actual malice requires a showing that the defamatory statement at issue was made with knowledge that it was false or with reckless disregard for the truth.[38]

This Court finds that Proudfoot's consulting agreement with the LTV Defendants provided Proudfoot with a conditional privilege to comment on Plaintiff's work performance. Plaintiff contends that Proudfoot's characterization of him as a "dragon" suggests that "venal motives may have been at work." [39] Proudfoot claims that it was performing its contractual obligations under the consulting agreement when it made the alleged statement. This Court has already concluded that under the broad terms of the consulting agreement Proudfoot could have legitimately concluded that Kipp's disagreements with its recommendations warranted labeling Kipp a "dragon." Proudfoot has conceded that it had disagreements with Plaintiff that would have justified its characterization of him. Proudfoot's evidence that it acted without malice in making the defamatory statement is undisputed. Plaintiff's argument that Proudfoot's description of him suggests that it acted with "venal motives" does not meet the definition of actual malice. Plaintiff equates actual malice with ill will. Plaintiff has not submitted any evidence that suggests Proudfoot made the statement with knowledge of its falsity or with reckless disregard for the truth. This Court finds that Proudfoot has met its burden of proving the absence of malice, and Plaintiff's evidence is not sufficient to raise a question of fact about the existence of actual malice. Therefore, Plaintiff cannot prevail on his defamation claim against Proudfoot.

## C. *Emotional Distress*

 Proudfoot contends that Plaintiff cannot meet the "extreme and outrageous" element needed to prove a claim for intentional infliction of emotional distress. This Court agrees. Proudfoot's communications about Kipp were related to LTVAD's proper management of its business: Kipp disagreed with Proudfoot's recommendations, pursuant to the consulting agreement, about the way in which LTVAD should be run. Proudfoot's conduct amounted only to an ordinary employment dispute. Ordinary employment disputes do not meet the "extreme and outrageous" behavior requirement of a claim for intentional infliction of emotional distress.[40] Furthermore, Plaintiff has presented no evidence that would take this case "beyond the realm of an ordinary employment dispute and into the realm of an outrageous one." [41] Therefore, Plaintiff's claim for intentional infliction of emotional distress must fail. Finally, his Court has already concluded that Plaintiff has no cause of action under Texas law for negligent infliction of emotional distress.

---

**37.** *Grocers Supply Co.*, 625 S.W.2d at 801.

**38.** *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

**39.** Plaintiff's Response and Brief in Opposition at 5.

**40.** *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33–34 (5th Cir.1992).

**41.** *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir.1989).