United States Court of Appeals,

Fifth Circuit.

No. 91–7363

Summary Calendar.

Walter W. JOHNSON, Plaintiff-Appellant,

v.

MERRELL DOW PHARMACEUTICALS, INC. and Dow Chemical Co., Defendant-Appellee.

July 10, 1992.

Appeal from the United States District Court For the Northern District of Texas.

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

PER CURIAM:

Walter W. Johnson, a former salesman for Merrell Dow Pharmaceuticals, Inc., appeals the dismissal of his claim for intentional infliction of emotional distress against Merrell Dow on summary judgment. The district court found that the conduct Johnson describes was not extreme and outrageous and did not cause Johnson to suffer severe emotional distress. We agree and affirm.

I.

Walter Johnson went to work as a sales representative for Merrell–National Laboratories, a division of Richardson–Merrell, Inc., in April 1976. Richardson–Merrell, Inc. was later renamed Merrell Dow Pharmaceuticals, Inc., (Merrell Dow), and is a wholly owned subsidiary of Dow Chemical Co., (Dow). At all relevant times Johnson was an "at-will" employee. Merrell Dow terminated Johnson in July 1988.

Johnson filed this suit for intentional infliction of emotional distress and wrongful termination. Johnson's claims are based on an alleged course of harassing conduct against him by his supervisors that culminated in his termination. He theorizes that the harassment was in retaliation for his questioning some business practices of the company and his decision to testify in favor of a former

Merrell Dow employee in that employee's suit against the company.

Because this case was decided on summary judgment, the acts that Johnson recites as the basis for his intentional infliction of emotional distress claim will be described in the light most favorable to Johnson, the nonmoving party. Johnson's problems started when Gena Reed was assigned as his Division Manager. According to Johnson, Reed was extremely hostile to him, constantly criticized him and threatened him with termination on numerous occasions. Reed filled out a Counseling Report which was marked as a "first warning" before termination. Johnson read this document as placing him on probation for an indefinite period. He complains that he was given no information as to how he could rectify his tenuous employment status. Reed realigned Johnson's sales territory four or five times in little over a year, assigning him less productive and less lucrative areas. She then criticized his ability to get his territories organized. On one occasion, Reed removed a $30,000 sale from Johnson's credits. The two also had numerous disputes over his record keeping and reporting; Johnson claims that she would not listen to his explanations for low sales call reports.

After Reed, Johnson worked for a series of Division Managers who treated him in a similar manner. Dave Kollman threatened him with termination when a physician reported that Johnson had left samples without obtaining the required signature. Kollman did not tell Johnson about the complaint until after 5 p.m. when the doctor's office was closed and then ordered Johnson to stay out of the dispute. It was later discovered that another doctor sharing the same office space had provided the required signature. Russ Graham, who terminated Johnson, told Johnson that he did not fit in with the company and suggested that he might be happier in another job. The Regional Manager, Pat Williams, also threatened to fire Johnson on several occasions and told Johnson that he was being disloyal to the company by maintaining a friendship with Gene Bruce, the employee on whose behalf Johnson agreed to testify.

Johnson eventually began to suffer from psychiatric problems and was placed on disability

leave from Merrell Dow. While he was out sick, Graham called him on a weekly basis, asking if he was still sick and telling him that his disability was hurting the company. While Johnson was still on disability, Graham called Johnson and in an upbeat voice, asked him to come to a meeting to discuss his future with the company. When Johnson arrived for the meeting with Graham and Williams, he was promptly fired. Graham and Williams had planned the termination as evidenced by a letter sent to Johnson's psychiatrist warning him of the impending action. One of the two shoved a counseling packet at Johnson and demanded the keys to his company car. When Johnson asked how he would continue his treatment, they told him he no longer had company insurance. Johnson also alleges that someone with Merrell Dow told his current employer that Johnson had been under psychiatric care.

On Merrell Dow's motion for summary judgment, the district court dismissed both of Johnson's causes of action. The court found that the facts Johnson adduced were not sufficient to support the claim for intentional infliction of emotional distress. This appeal followed.

## II.

To prevail on a claim for intentional infliction of emotional distress, Texas law requires the plaintiff to prove the following: (1) that the defendant acted intentionally or recklessly, (2) that the defendant's conduct was extreme and outrageous, (3) that the actions of the defendant caused the plaintiff emotional distress, and (4) that the emotional distress suffered was severe. *Tidelands Auto Club v. Walters,* 699 S.W.2d 939, 942 (Tex.App.—Beaumont, 1985, writ ref'd, n.r.e.).

"Extreme and outrageous" conduct is difficult to define. In *Dean v. Ford Motor Credit Co.,* 885 F.2d 300 (5th Cir.1989), we stated that:

> [l]iability [for outrageous conduct] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community ...

Id. at 306 (citing Restatement (Second) of Tort s § 46, Comment d (1965)). Liability "does not

extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Rest. (Second) of Torts § 46.

Specifically in the employment context, this court applying Texas law has repeatedly stated that a claim for intentional infliction of emotional distress will not lie for mere "employment disputes." The range of behavior covered in "employment disputes" is quite broad and covers most of the conduct complained of by Johnson. For example, in *Wilson v. Monarch Paper Co.,* 939 F.2d 1138 (5th Cir.1991), a combination age discrimination and emotional distress case, the plaintiff was relieved of his physical distribution duties and assigned to be supervisor of a warehouse. His manager refused to speak to him and other managers would not work with him. His co-workers referred to him as old. We held that all of this conduct was "within the realm of an ordinary employment dispute." Id. at 1145, (internal citations omitted). Similarly, in *Dean,* we concluded that the plaintiff's complaints of extra work, "special" reviews to downgrade her performance, and frequent transfers were also insufficient to support a claim for intentional infliction of emotional distress. 885 F.2d at 304–05, 306–07.

Most of the acts complained of by Johnson "fall within the realm of an ordinary employment dispute." *Wilson.* In order to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer and discipline employees. Not all of these processes are pleasant for the employee. Neither is termination. However, there is no indication that Johnson is anything other than an at-will employee. An employer will not be held liable for exercising its legal right to terminate an employee, "even though he is well aware that such [action] is certain to cause emotional distress." *Diamond Shamrock Ref. and Mktg. Co. v. Mendez,* 809 S.W.2d 514, 522 (Tex.App.—San Antonio 1991, writ granted on other grounds). Merrell Dow was within its rights to terminate Johnson, even though he was suffering from psychiatric disability.

The only act that Johnson lists as extreme and outrageous behavior that falls outside of a

nonactionable employment dispute is his allegation that someone at Merrell Dow told his current employer that he had been under psychiatric care. This factually accurate report does not rise to the level of extreme and outrageous behavior. Compare *Dean,* (Employer planted company checks on plaintiff to make it appear that she was stealing from the company.); *Wilson,* (Plaintiff was demoted from Vice–President and Assistant to the President of the company to an entry level warehouse supervisor position whose main duties were janitorial.); *Casas v. Wornick Co.,* 818 S.W.2d 466 (Tex.App.—Corpus Christi 1991) (Plaintiff was fired for refusing to misrepresent facts to government auditors, was escorted off premises out by a security guard in the presence of her co-workers and told she had five minutes to leave the premises.)

Because we affirm the district court's judgment on this basis, we need not address defendants' alternate arguments regarding the statute of limitations and First Amendment concerns.

AFFIRMED.