Steve T. BADGETT

v.

NORTHWESTERN RESOURCES CO.

Civ. A. No. W–92–CA–277.

United States District Court,
W.D. Texas,
Waco Division.

April 8, 1993.

Brian L. Gibson, Groesbeck, TX, for plaintiff.

John H. Spurgin, II, McGinnis, Lochridge & Kilgore, Austin, TX, for defendant.

## ORDER

WALTER S. SMITH, Jr., District Judge.

This lawsuit arises out of an employment relationship between Plaintiff, Badgett, and Defendant, Northwestern Resources Company ("NWR"). Badgett alleges that NWR wrongfully terminated his employment by breaching an alleged employment contract and by firing him without "good cause." Badgett also alleges that NWR committed acts amounting to intentional or reckless infliction of emotional distress.

### A. *Background*

The pleadings and summary judgment proof presented establish the following:

NWR hired Badgett as an at will employee on February 10, 1986. At that time he received a copy of the NWR Employee Handbook which clearly indicated that the Handbook was not an employment contract. The Employee Handbook sets forth a "positive discipline" policy aimed at reducing absenteeism, complaints, disciplinary actions, and terminations. Positive discipline consists of a progressive series of steps beginning with (1) coaching: a method for a supervisor to inform the employee that a problem exists and develop effective solutions; (2) oral reminder: a private documented conversation between an employee and his or her supervisor occurring after informal conversations have failed to correct a problem. An oral reminder is active for three months; (3) written reminder: a formal documented conver-

sation between an employee and his or her supervisor about a performance problem. A written reminder is active in the employee file for six months; (4) Decision–Making Leave ("DML"): a conversation between an employee and his or her supervisor concerning a serious problem which is followed by one day of leave so the employee can decide whether he or she can continue working for NWR. A DML is active for twelve months; and (5) termination.

Badgett had much experience with the "positive discipline" system while employed by NWR. On January 6, 1988 he was warned in his employee appraisal to "keep an eye on attendance." After reporting late to work on October 1, 1988, he was given an oral reminder of his attendance problem. Badgett was reprimanded for poor attendance in his October 17, 1988 employee appraisal. He received a written reminder on December 23, 1988 for his continued violation of NWR's attendance policy. On June 11, 1989, he was placed on Decision–Making Leave ("DML"), the last in a series of progressive discipline steps, for failing to comply with NWR's attendance policy. In his July 25, 1989 employee appraisal, Badgett was again admonished for his substandard attendance and safety record. In this same appraisal form, Badgett agreed to improve his performance in these areas. On August 8, 1990, Badgett was given a written reminder of his poor safety and accident record. On October 20, 1990, Badgett's supervisor discussed his attendance problems with him and set up guidelines for Badgett to follow in order to improve his performance. Badgett was again placed on DML on November 9, 1990 for poor attendance and chronic safety violations. This occurred only five months after his prior DML had been deactivated. On November 20, 1990, Badgett made a written apology for his poor attendance record. Nevertheless, Badgett reported to work two hours late on February 14, 1991 because his truck ran out of gas. Badgett also reported to work two hours late on October 23, 1991 because he overslept. NWR terminated Badgett's employment on October 23, 1991.

Badgett subsequently filed suit in state court alleging wrongful termination and breach of an employment contract by NWR. Badgett also alleges that NWR intentionally or recklessly engaged in conduct which inflicted emotional distress upon him. NWR removed the case to federal court and now moves for summary judgment on the following grounds: (1) there is no evidence of a contract between NWR and Badgett; (2) Badgett's claim for breach of contract is barred by the statute of frauds; (3) Badgett's wrongful discharge claim fails to state a cause of action; (4) NWR's termination of Badgett was for good cause; (5) there is no cause of action for negligent infliction of emotional distress under Texas law; and (6) NWR's conduct did not constitute intentional infliction of emotional distress.

## B. *Summary Judgment*

■ Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A disputed material fact is genuine if the evidence is such that a jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The initial burden to demonstrate the absence of a genuine issue concerning any material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden can be satisfied by pointing out to the district court that there is an absence of evidence to support an essential element of the non-moving party's case. *Id.* Upon such a showing, the burden shifts to the non-moving party to establish that there is a genuine issue. *Id.* at 324, 106 S.Ct. at 2553. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

## C. *Discussion*

### 1. *Wrongful Termination*

Badgett's wrongful termination claim arises from his allegations that the disciplinary procedures set forth in the Employee Handbook he received when he began working for NWR, together with oral representations from a supervisor that the procedures would be binding upon Badgett, gave rise to a contractual relationship between Badgett and NWR such that Badgett's employment could only be terminated "for cause." Badgett also alleges that an oral employment contract was formed independent of the Employee Handbook.

Because Texas courts continue to follow the employment at will doctrine, it is essential to Badgett's wrongful termination claim that he prove the existence of an employment contract providing for other than "at will" termination. *See Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir.1991)

### a. *The Alleged Oral Contract is Not Within The Statute of Frauds*

 NWR's first challenge to the existence of an oral contract is that such a contract is barred by the statute of frauds. Badgett's response is that the alleged oral contract is performable within one year and thus is outside the statute of frauds. Badgett argues that, by the terms of the oral contract, he could have been terminated for cause anytime after the contract was formed and therefore could have been properly terminated within one year of the contract's formation.

Whether a contract comes within the statute of frauds is a question of law. *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 463 (5th Cir.1991) (quoting *Bratcher v. Dozier*, 162 Tex. 319, 346 S.W.2d 795, 796 (1961)). The statute of frauds in Texas provides that an oral agreement that cannot be performed within one year from the date of its making is unenforceable. Tex.Bus. & Com.Code Ann. § 26.01(b)(6) (Vernon 1987); *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 463 (5th Cir.1991). In *Pruitt*, the Fifth Circuit, holding that an oral employment contract allowing termination for cause was not within the statute of frauds, stated:

> The courts of Texas have recognized that the statute of frauds does not render unenforceable an indefinite term oral contract if termination could occur in the first year. The general rule in Texas when no period of performance is stated in an oral employment contract is that the statute of frauds does not apply because the contract is performable within a year.... If an oral employment contract can cease upon some contingency, other than by some fortuitous event or the death of one of the parties, the agreement may be performed within one year and the statute of frauds does not apply.... The statute of frauds bars only [oral] contracts which *must* last longer than one year.

932 F.2d 458, 463–64 (5th Cir.1991) (alteration in original) (citations omitted). Since the alleged oral contract at issue here provides "for cause" termination, it is capable of being performed in less than one year and is therefore outside the statute of frauds.

### b. *Badgett Has Failed to Meet His Burden to Show Evidence of an Oral Contract*

 Our summary judgment inquiry does not end just because the alleged oral contract is not within the statute of frauds. In a summary judgment motion, the moving party may argue that there is no genuine issue concerning any material fact to support an essential element of the non-moving party's case by pointing out that there is an absence of evidence supporting that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). NWR points to the fact that Badgett has produced no evidence of the alleged oral contract. NWR also claims and has produced evidence that none of the supervisory personnel at NWR were authorized to bind NWR to an oral employment contract. NWR, therefore, has satisfied its burden to demonstrate the lack of a genuine issue as to the existence of an oral contract. Upon such a showing, the burden shifts to the non-moving party to establish that there is a genuine issue. *Id.* Thus, the burden shifts to Badgett to establish a genuine issue as to the existence of the alleged oral contract. *Id.* Badgett has wholly failed to meet this burden. Not only has Badgett failed to produce any evidence of the alleged oral contract, he has failed to even

provide the name of a person who told him that he could not be fired without cause. As a result, Badgett has failed to establish a genuine issue of material fact as to the existence of an oral contract.

### c. The Employee Handbook Alone Cannot Form an Employment Contract as a Matter of Law

■ Having found that Badgett has failed to meet his burden of establishing the existence of an oral contract, his only remaining argument supporting his wrongful termination claim is that the Employee Handbook created a contract providing for other than "at will" employment. Employee handbooks do not create contracts when the parties have not expressly agreed that the procedures contained in them are binding. *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir.1991). Compliance, or attempted compliance, with disciplinary guidelines found in an employee manual should not be turned against an employer as evidence that it treated the manual as a contract. *Id.* at 472. The Fifth Circuit in *Zimmerman* recognized the dilemma an employer faces in providing disciplinary guidelines in an at-will employment relationship, stating:

> To equate compliance with employee manual guidelines with treatment of a manual as a contract is to create a claim "Catch 22" for employers: if an employer follows the guidelines in disciplining or discharging an employee, the employee could argue that the employer thereby treated the manual as a contract; but if an employer does not follow the guidelines, then the employee could excoriate the employer for failing to follow guidelines that it represented it would follow.

*Id.* The disciplinary procedures outlined in NWR's Employee Handbook were not binding and did not give rise to a contract between NWR and Badgett.

■ In *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196 (5th Cir.1987), the Fifth Circuit recognized an exception to the general rule in Texas that employee handbooks do not create contractual rights. Badgett argues that the exception recognized in *Aiello* is applicable to this case. *Aiello* held that employee handbooks and manuals may constitute employment contracts if they contain specific disciplinary procedures *and* an employer is obligated to discharge only for just cause. *Id.* at 1198. Badgett overlooks a key distinction between *Aiello* and the case at bar, however. In *Aiello*, the employee handbook specifically stated that employees could only be discharged for "good cause." *Id.* NWR's Employee Handbook, on the other hand, made no such representation and expressly stated that the Handbook was not an employment contract. Accordingly, NWR's Employee Handbook did not create an employment contract altering the at-will employment relationship between Badgett and NWR.

### d. Badgett was Discharged for Good Cause

■ Assuming, arguendo, that an employment contract existed between Badgett and NWR such that Badgett could only be discharged for cause, Badgett was properly discharged. The evidence before this court clearly indicates that Badgett habitually violated NWR's attendance and safety policies. NWR followed its disciplinary procedures and gave Badgett numerous warnings and opportunities to correct his substandard conduct. Accordingly, NWR had good cause to terminate Badgett.

### 2. Intentional Infliction of Emotional Distress

■ Badgett claims that he was the target of intentional infliction of emotional distress by NWR. The Texas Supreme Court has not expressly recognized the tort of intentional infliction of emotional distress, but a number of Texas courts of appeals have done so. *Diamond Shamrock Refining v. Mendez*, 844 S.W.2d 198, 201 (Tex.1992). To prevail on a claim for intentional infliction of emotional distress, Texas law requires that the following four elements be established: (1) that the defendant acted intentionally or recklessly; (2) that the conduct was extreme and outrageous; (3) that the actions of the defendant caused the plaintiff emotional distress; and (4) that the emotional distress was severe. *Ramirez v. Allright Parking El Paso, Inc.*, 970 F.2d 1372, 1375 (5th Cir. 1992); *Wilson v. Monarch Paper Co.*, 939

F.2d 1138, 1142 (5th Cir.1991); *Tidelands Auto Club v. Walters,* 699 S.W.2d 939, 942 (Tex.App.—Beaumont, 1985, writ ref'd, n.r.e.).

### a. NWR's Conduct Was Not Extreme and Outrageous

Extreme and Outrageous conduct has been defined as:

> [W]here the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.... Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim "Outrageous."

*Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1985) (citing Restatement (Second) of Torts § 46, Comment d (1965)). The Restatement also provides limits on what conduct may be found to be outrageous by stating that liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities ... There is no occasion for the law to intervene in every case where someone's feelings are hurt." Restatement (Second) of Torts § 46. The Fifth Circuit has repeatedly stated that a claim for intentional infliction of emotional distress will not lie for mere "employment disputes." *Johnson v. Merrell Dow Pharmaceuticals,* 965 F.2d 31, 33 (1992). The range of behavior covered in "employment disputes" is quite broad. *Id.*

 Turning to the facts of the case at hand, Badgett has offered the oral depositions and affidavits of various coworkers in support of his intentional infliction of emotional distress claim. NWR challenges the validity of these depositions and affidavits, arguing that they are not based on personal knowledge and are composed almost entirely of inadmissible hearsay. Assuming, arguendo, that the depositions and affidavits are admissible, the evidence offered by Badgett relating to his wrongful termination claim may be summarized as follows: (1) Badgett's boss "seemed to be out to get Steve Badgett"; (2) NWR searched back through Badgett's employment records seeking old occurrences to use against him; (3) other coworkers, who were not as good an employee as

Badgett, were never put on decision-making leave or fired; (4) NWR's positive discipline procedures were applied against Badgett unfairly; (5) Badgett's supervisors treated him differently and picked on him because Badgett's father, Tom Badgett, had authority over Steve Badgett's supervisors and forced them to do their jobs; (6) Steve Badgett was fired to get back at Steve's father; (7) Steve Badgett was treated differently after his father caught a production employee asleep on the job; (8) time cards were altered to make Badgett's attendance appear worse than it actually was; (9) the real reason why Steve Badgett was fired was because Steve's father embarrassed a supervisor in Steve's department. The evidence offered by Badgett does not meet the definition of extreme and outrageous conduct. Further, the conduct Badgett complains of clearly falls within the broad range of behavior characterized by the Fifth Circuit as "employment disputes" and thus cannot form the basis of an intentional infliction of emotional distress claim.

### b. Badgett Did Not Suffer Severe Emotional Distress

 Badgett must establish that he suffered "severe" emotional distress in order to recover on his intentional infliction of emotional distress claim. The term "emotional distress" means any highly unpleasant mental reactions such as extreme grief, shame, humiliation, embarrassment, anger disappointment and worry. *Tidelands Auto Club v. Walters,* 699 S.W.2d 939, 941, 945 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.). Emotional distress is severe when the distress inflicted is so extreme that no reasonable man could be expected to endure it without undergoing unreasonable suffering. *Id.* An employer will not be held liable for exercising its legal right to terminate an employee, "even though he is well aware that such action is certain to cause emotional distress." *Johnson v. Merrell Dow Pharmaceuticals,* 965 F.2d 31, 34 (5th Cir.1992). A certain degree of emotional distress will accompany losing a job, but this type of distress and anxiety, without evidence of outrageous conduct by the employer, will not give rise to a cause of action for intentional infliction of emotional distress. *Id.* at 33. In his deposition, Badgett testifies that his emotion-

al distress is comprised of worry over paying his bills, headaches which ended in 1989, a negative attitude, and depression from wondering if and when he might be terminated. These complaints are not "severe" as is required for an intentional infliction of emotional distress claim.

### 3. *Negligent Infliction of Emotional Distress*

To the extent that Badgett has alleged negligent infliction of emotional distress, such claim must also fail. The Texas Supreme Court has never recognized a cause of action in the employee/employer relationship for negligent infliction of emotional distress. *Conaway v. Control Data Corp.*, 955 F.2d 358, 361 (5th Cir.1992). Furthermore, the Texas Supreme Court recently abrogated the negligent infliction of emotional distress cause of action altogether. *Boyles v. Kerr,* —— S.W.2d ——, —— 36 Tex.Sup.Ct.J. 13, 16 (October 13, 1992).

### D. *Conclusion*

Having reviewed all of the summary judgment proof presented, as well as the briefs of the parties, the Court is persuaded that there is no genuine issue as to any material fact regarding the existence of an employment contract providing for other than "at will" termination. Defendant successfully established that there is no evidence of any such contract and Plaintiff has failed to adequately respond by producing evidence of such a contract. Defendant has successfully established that its conduct toward Plaintiff was neither extreme nor outrageous and therefore may not form the basis of an intentional infliction of emotional distress claim. Finally, Plaintiff may not claim negligent infliction of emotional distress because such a cause of action is not recognized under Texas law. Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED.**

It is further **ORDERED** that any motions not previously ruled upon by the court are **DENIED.**