IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-5570
_____


CASSANDRA MacARTHUR,

                                        Plaintiff-Appellant,

                    versus

UNIVERSITY OF TEXAS HEALTH CENTER AT
TYLER and MICHAEL WILSON, sued in
his individual and official capacities,

                                        Defendants-Appellees,

                         and

RICHARD PAINTER, sued in his individual
and official capacities,

                                        Defendant-Appellee-
                                        Cross-Appellant.
_____

         Appeal from the United States District Court for the
                       Eastern District of Texas

_____
                         (February 8, 1995)

Before GOLDBERG, JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     Cassandra MacArthur, a research laboratory technician, filed

this employment discrimination action against University of Texas

Health Center at Tyler, and against Dr. Richard Painter and Dr.

Michael Wilson, who worked with her at the Health Center.  The

district court submitted to the jury special interrogatories on

MacArthur's  claims  of  sex  discrimination,  First  Amendment

retaliation and intentional infliction of emotional distress. The jury refused to award her damages on her claims of First Amendment retaliation or sex discrimination, but found in her favor and against Dr. Painter on the state law claim of intentional infliction of emotional distress. On appeal, she raises several evidentiary rulings related to the Title VII retaliation claim, which she pleaded, but which she failed to present to the jury for determination. Dr. Painter cross-appeals and challenges the sufficiency of the evidence to support the jury's award of damages to MacArthur for intentional infliction of emotional distress. Upon review of the record, we dismiss the appeal of MacArthur's Title VII retaliation claim and reverse judgment against Painter on intentional infliction of emotional distress.

I

Cassandra MacArthur worked for University of Texas Health Center at Tyler ("UTHC") as a research lab technician in the biochemistry department for approximately six years. During her employment with UTHC, MacArthur's direct supervisor was Dr. Alan Cohen, a biochemistry faculty member and Executive Associate Director of UTHC. Dr. Richard Painter was the department chair of biochemistry and Dr. Michael Wilson was the Assistant Director of Human Resources while MacArthur worked for UTHC. This case arises out of alleged events occurring between MacArthur and Dr. Painter. Many of the details of these events are disputed among the parties.

Problems began between MacArthur and Painter in October 1988, when MacArthur reported to Cohen an incident in which Painter yelled and screamed at a female employee, Ferdicia Carr. MacArthur testified that she complained to Cohen that Painter "can't continue to abuse women in this manner." Cohen--a witness friendly to MacArthur--testified, however, that he did not remember whether MacArthur complained of Painter's alleged sex discrimination. MacArthur, nevertheless, argues that Painter began to retaliate against her after she reported this single incident. The most serious of these alleged retaliatory events by Painter and Wilson against MacArthur occurred in August 1989 when MacArthur admittedly and erroneously disposed of radiation in the regular wastebasket, rather than in the radioactive materials wastebasket. As a result of this error, the Radiation Safety Committee first placed MacArthur on probation, allowing her to use radiation only under supervision. The committee ultimately indefinitely revoked her privilege to use radiation when it found her incompetent not only in disposal, but also in use of the radioactive materials. This sanction resulted in MacArthur's demotion and salary reduction. Cohen warned MacArthur in a memorandum dated June 19, 1990, that if she failed to have her radiation privileges reinstated by December 6, 1990, she would be terminated. MacArthur resigned approximately one week after receiving this memorandum. MacArthur argues that UTHC imposed an exaggerated discipline on her as compared to that resulting from other more serious radiation

problems by co-workers.  She contends that this was the result of Painter's involvement and control of the committee that ultimately imposed the punishment.[1]

Additionally, MacArthur argued that an incident involving Painter's laboratory technician, Izola Williams, constituted further unlawful retaliation.  Williams asked MacArthur to assist her with using an incubator.  Over the weekend, MacArthur adjusted a switch on the incubator in an attempt to correct the pace of the machine.  She reported this fact later to Williams who in turn informed Painter.  On Monday, Painter found the cells in the incubator dead and blamed MacArthur.  He then wrote a memorandum to Cohen, recommending  that MacArthur be restricted from the tissue culture facility.  He also yelled at MacArthur to stay out of his laboratory.  MacArthur argues that Painter, thus, "threatened [her] career when he made public, trumped-up charges of sabotage against [her]."[2]

With respect to Dr. Wilson's retaliation, MacArthur points to the internal grievance she filed with Wilson's department after the incubator incident occurring in Dr. Painter's laboratory against

_____

[1]Dr. Painter supervised, and performed routine employee evaluations for all but one member of the Committee.  Additionally, Painter was a member of this Committee.

[2]MacArthur argues that Painter retaliated against her in several additional incidents, including threatening her with scientific misconduct for using her own blood in an experiment, writing her up for receiving personal mail at work, and reporting her for ordering mice from another technician's protocol.

Painter concerning his "intimidation of women." MacArthur argues that Wilson then retaliated against her for complaining about management by "torpedoing her grievance" and by "losing" critical records. Henry Jackson, Director of Affirmative Action and Equal Employment for UTHC, conducted the investigation into MacArthur's allegations. MacArthur argues that during the investigation into her grievance Wilson stated to Jackson not "to worry" about Painter's concerns that he was receiving no "managerial support,"[3] because UTHC still had MacArthur's performance and radiation problems to resolve. She contends that this statement indicated that Wilson was going to use her problems with radiation as a means to fire her. Jackson testified that he understood this statement to mean that UTHC would be forced to terminate her employment because the Radiation Safety Committee was going to suspend indefinitely MacArthur's radiation privileges based on her substandard performance and problems with radiation.

On October 1, 1992, following her resignation in June, MacArthur filed this suit in the United States District Court for the Eastern District of Texas against UTHC, and Wilson and Painter in both their individual and official capacities. She alleged discrimination because of her sex, and retaliation because of her

---

[3]Wilson and Ron Dodson, the head of Research, were, according to Wilson, concerned that Jackson was asking too many questions during his investigation of Painter and not giving Painter enough support. Wilson, however, informed Dodson that Jackson was only doing his job and told Jackson "don't worry, we still have the performance and radiation issue."

opposition to sex discrimination pursuant to Title VII of the Civil Rights Act of 1964. MacArthur further alleged a cause of action under 42 U.S.C. § 1983 based on retaliation for her exercise of protected First Amendment speech concerning sex discrimination. She additionally asserted a cause of action under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and, finally, a state law claim of intentional infliction of emotional distress.[4]

Prior to trial, the defendants submitted to the district court a motion in limine asking the court to exclude all evidence of retaliation by UTHC against employees other than MacArthur. The court granted the defendants' motion and assigned the case to a different district court judge for trial. During trial, the district court excluded certain other evidence offered by MacArthur to prove her retaliation claims. MacArthur argues that the district court erroneously granted the motion in limine and erroneously excluded critical evidence that Wilson had previously retaliated against other employees who complained about management. She also argues that the district court erred by excluding evidence that the Radiation Safety Committee disciplined other radiation problems more leniently than it disciplined her.

---

[4]On July 1993, the district court dismissed MacArthur's state law claims against Wilson and Painter in their official capacities and dismissed her Title VII claims against Wilson and Painter in their individual capacities. This decision is not appealed.

The district court, without objection and with approval of the parties, submitted to the jury special interrogatories only on three issues: Title VII sex discrimination, First Amendment retaliation, and intentional infliction of emotional distress. MacArthur submitted no interrogatory to the jury on a Title VII retaliation claim, nor was the jury so instructed, nor did she argue to the jury retaliation based on Title VII. The jury awarded MacArthur $65,000 for intentional infliction of emotional distress against Dr. Painter. The jury found in favor of the defendants, however, on the Title VII sex discrimination claim and on the First Amendment retaliation claim. The district court entered judgment based on this verdict, dismissing all claims against the defendants and awarding the plaintiff judgment of $65,000 on the intentional infliction of emotional distress claim. Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, MacArthur made a timely motion for a partial new trial, arguing that the district court erroneously excluded certain evidence of retaliatory treatment of "comparatively situated employees," offered to prove her claims of "discrimination/retaliation."[5] The district court, without comment

---

[5]In her reply brief filed with this court, MacArthur explained that "discrimination/retaliation" should be deciphered, consistent with her intent, to mean retaliation in violation of Title VII of the Civil Rights Act of 1964. She explained that she used this mixed generic term "because the anti-retaliatory provision of Title VII refers to retaliation as another prohibited form of discrimination." MacArthur did not argue that the district court erred in failing to submit an interrogatory to the jury related to discrimination/retaliation under Title VII.

on the merits, denied in whole MacArthur's motion for a partial new trial. MacArthur filed a timely notice of appeal from the district court's final judgment and denial of a partial new trial. Her appeal, however, only raises error with respect to a Title VII retaliation claim. Furthermore, on appeal, she raises only one issue--that the district court committed reversible error by excluding evidence that would have proved the defendants' discriminatory intent in support of her Title VII retaliation claim. The defendants cross-appealed arguing that the evidence was insufficient to support the jury's verdict for intentional infliction of emotional distress.

## II

### A

MacArthur argues that the district court abused its discretion by excluding certain evidence that she attempted to present to establish the defendants' retaliatory intent required with respect to her Title VII retaliation claim.[6] This evidence consisted of incidents of the defendants' pattern and practice of retaliation against other employees who complained about management.

---

[6]Although the district court did not give specific rationale for excluding the evidence in the motion in limine and during trial, it should be noted that given the state of the record, we cannot say the district court abused its discretion in excluding this evidence. See EEOC v. Manville Sales Corp., 27 F.3d 1089, 1092-93 (5th Cir. 1994) (stating that we review evidentiary rulings only for abuse of discretion). As suggested at oral argument, MacArthur failed to demonstrate that the excluded evidence was probative to the question of discrimination in this case.

In order to resolve this question, we must examine what claims are actually before this court on appeal. In her notice of appeal, MacArthur states that she appeals both the district court's final judgment entered in this case and order denying her motion for partial new trial. She does not even mention denial of this motion in her briefs on appeal. Consequently, she has abandoned any issue or claim that arises from the denial of her new trial motion that is independent of the underlying judgment, which she also appeals. See FED. R. APP. P. 28(a)(5) ("The argument must contain the contentions of the appellant on the issues presented, and the reasons therefor"); Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993) (holding that appellant abandoned argument by failing to argue it in body of brief).

We now turn to examine the underlying judgment to determine what claims and issues are before us--especially focusing on MacArthur's Title VII retaliation claim. The procedural facts concerning this claim are simple. MacArthur pleaded in her complaint a cause of action for retaliation under Title VII, together with First Amendment retaliation, sex discrimination, intentional infliction of emotional distress, and a violation of the Equal Protection Clause. Each of these claims appeared in the pretrial order. It is clear, however, that MacArthur ultimately argued and presented for the jury's determination only three claims: the First Amendment retaliation claim, the sex discrimination claim, and the intentional infliction of emotional

-9-

distress claim.  In her closing argument, MacArthur argued evidence that she contended supported retaliation generally; she did not refer to retaliation based on Title VII at any point during this argument.  It is further clear that the district court did not instruct the jury on Title VII retaliation; the court instructed the jury extensively on the law concerning First Amendment retaliation, as well as on the other two claims, but did not say a single word with respect to Title VII retaliation.  At the close of the instructions, when given an opportunity to object, MacArthur did not object to the court's failure to instruct on Title VII retaliation.  Neither did she object to the omission of any interrogatory to the jury with respect to her Title VII retaliation claim.[7]  Her failure to lodge an objection to these omissions of Title VII retaliation is all the more indicative of her intent to abandon the claim because she specifically objected to the omission of an Equal Protection Clause claim, which the court overruled; in other words, her failure to object was not inadvertent as though she were asleep at the switch.  In sum, MacArthur failed to argue this claim, failed to have the jury instructed on this claim and failed to submit this claim for the jury's determination and verdict.  Under these circumstances, the jury failed to return any verdict with respect to her Title VII retaliation claim.  The court, specifically stated in the final judgment "<u>pursuant to the</u>

---

[7]The jury verdict form is produced and attached to this opinion as Appendix A.

verdict returned by the jury, the Court enters the following judgment." The court then dismissed, with prejudice, all claims against the defendants, except the claim for intentional infliction of emotional distress, with respect to which it entered judgment for MacArthur. Neither in post-trial motions, nor on appeal, does MacArthur raise as error the district court's failure to instruct the jury or submit an interrogatory on Title VII retaliation. Our review of the record, therefore, demonstrates that MacArthur abandoned her Title VII claim and choose to travel with her First Amendment claim for retaliation based on the exercise of her right to speak freely.

B

In appealing the final judgment, MacArthur effectively raised her claims of sex discrimination and First Amendment retaliation. She also effectively raised in her notice of appeal, the denial of her motion for a partial new trial. She has abandoned each of these claims on appeal, however, by her failure to argue any of these claims to this court--her brief arguing only error with respect to the Title VII retaliation claim. Although some confusion arose between the parties as to whether MacArthur was appealing her sex discrimination claim, MacArthur clarified this point in her reply brief when she stated that the sole issue on appeal was that of retaliation. Throughout her briefs, this claim of retaliation was consistently referred to as "a discrimination/retaliation case." She explained that she used this label "because

the anti-retaliatory provision of Title VII refers to retaliation as another prohibited form of discrimination." Furthermore, MacArthur's sole argument for admissibility of the evidence at the center of this appeal is that its exclusion prevented her from proving pretext as required under Title VII. In her briefs, MacArthur does not refer to her First Amendment retaliation claim a single time. In sum, the only conclusion that can be drawn from the foregoing facts is that MacArthur does not appeal her claim that the retaliation at issue was for exercising her First Amendment rights. See FED. R. APP. P. 28(a)(5) ("The argument must contain the contentions of the appellant on the issues presented, and the reasons therefor"); Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993) (holding that appellant abandoned argument by failing to argue it in body of brief). Instead, on appeal MacArthur apparently made a strategic determination that in retrospect a Title VII retaliation claim was a stronger basis for her sole argument on appeal that the district court erred in excluding comparative evidence to establish disparate treatment.

Thus, in conclusion, we must dismiss this appeal. We do so on the basis that the one claim that she raises--Title VII retaliation--was abandoned at the district court, thus is not embodied in the district court judgment, and consequently is not before this court on appeal. With respect to the claims that were presented to the jury and that are embodied in the district court's

-12-

final judgment, she has abandoned these claims on appeal by failure to brief and argue.  MacArthur's appeal is therefore dismissed.

III

A

Finally we turn to Dr. Painter's appeal and consider whether the evidence presented supports the jury's verdict in favor of MacArthur on intentional infliction of emotional distress.  We review a challenge to the sufficiency of the evidence supporting a jury verdict to determine whether

> reasonable and fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions....  A mere scintilla is insufficient to present a question for the jury....  However, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

Boeing v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc).

Before addressing the question of the sufficiency of the evidence, however, we must address the procedural question of whether Painter waived his right to challenge the evidentiary support for the verdict when he failed to renew his motion for judgment as a matter of law at the close of all evidence presented in this trial.  In accordance with Rule 50(b) of the Federal Rules of Civil Procedure, it is well-settled that a motion for judgment as a matter of law must be renewed at the conclusion of trial in order to preserve the review of the sufficiency of the evidence on

-13-

appeal.[8]  McCann v. Texas City Refining, Inc., 984 F.2d 667, 671 (5th Cir. 1993).  In certain limited situations, however, we have excused technical non-compliance with Rule 50(b).  See, e.g., Davis v. First Nat. Bank, 976 F.2d 944, 948 (5th Cir. 1992), cert. denied, 113 S.Ct. 2341 (1993) (Wiener, J.); Merwine v. Board of Trustees for State Institutions, 754 F.2d 631, 635 (5th Cir. 1985), cert. denied, 474 U.S. 823 (1985).  Whether technical noncompliance with Rule 50(b) precludes a challenge to the sufficiency of the evidence on appeal "should be examined in the light of the accomplishment of its particular purposes as well as in the general context of securing a fair trial for all concerned in the quest for truth."  Bohrer v. Hanes Corp., 715 F.2d 213, 217 (5th Cir. 1983), cert. denied, 465 U.S. 1026 (1984).  This rule serves two basic purposes:  to enable the trial court to re-examine the sufficiency of the evidence as a matter of law if, after verdict, the court must address a motion for judgment as a matter of law, and to alert the opposing party to the insufficiency of his case before being submitted to the jury.  Bohrer, 715 F.2d at 216.  In Bohrer, like here, the court reserved ruling on a motion for directed verdict

---

[8]When the defendant fails to renew the motion for judgment as a matter of law at the close of all the evidence, our inquiry is limited to "whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a 'manifest miscarriage of justice.'"  Coughlin v. Capitol Cement Co., 571 F.2d 290, 297 (5th Cir. 1978).  Even if no evidence supports the verdict, we cannot render judgment in favor of Painter, but rather must order a new trial.  McCann, 984 F.2d at 673.

made at the close of the plaintiff's evidence.  Id. at 217.  The defendants then presented substantial evidence, to which the plaintiffs presented no rebuttal testimony.  Id.  We excused the defendants' failure to make a motion at the conclusion of all the evidence because the purposes of the rule were satisfied.  Id.  We concluded that

> [t]o demand a slavish adherence to the procedural sequence and to require these defendants, in this case, to articulate the words of renewal once the motion had been taken under advisement, would be 'to succumb to a nominalism and a rigid trial scenario as equally at variance as ambush with the spirit of our rules.'

Bohrer, 715 F.2d at 217 (quoting Quinn v. Southwest Wood Prods., Inc., 597 F.2d 1018, 1025 (5th Cir. 1979)).

Even though Painter failed to comply with the strict terms of the rule, we conclude that this case is one in which his failure can be excused.  At the close of MacArthur's case-in-chief, Painter moved for judgment as a matter of law on all claims, including the intentional infliction of emotional distress claim.  With respect to this claim, the district court judge reserved ruling on the motion, saying that he was going to "carry that motion along...for the time being."  The defendants, including Painter, introduced numerous witnesses.  At the close of the defendants' evidence, MacArthur presented two witnesses in rebuttal.  At the close of this rebuttal testimony, Painter renewed his motion for judgment as a matter of law on all claims except intentional infliction of emotional distress.  MacArthur sought to reintroduce no evidence.

-15-

The district court denied all motions. Following entry of judgment, Painter moved for judgment notwithstanding the verdict on the only claim decided against him--intentional infliction of emotional distress. The judge denied this motion.

The record reflects that the purposes of the rule were satisfied. We can discern no prejudice to MacArthur by Painter's failure technically to comply by renewing his motion on the intentional infliction of emotional distress claim. MacArthur was not blind-sided by Painter's failure to call to her attention at the close of trial to the insufficiency of her evidence. When Painter suggested the deficiency in her proof on the intentional infliction of emotional distress claim at the close of her case, she put on no further evidence directed to this claim. At the close of all the evidence, Painter made the motion on all other claims except the intentional infliction of emotional distress claim, which actually was still pending before the court. Furthermore, MacArthur acknowledges on appeal that the same evidence that supports her discrimination and retaliation claims is the sole evidence that supports her intentional infliction of emotional distress claim. Thus, for all practical purposes, MacArthur was afforded an opportunity at the close of all evidence to introduce other evidence on the intentional infliction of emotional distress claim, but did not do so. Moreover, she does not suggest any additional evidence tending to prove that Painter

acted outrageously.[9]  This case thus falls in the category with those cases in which we have excused technical compliance with Rule 50(b).  Accordingly, we review this issue under the reasonable juror standard noted above in Boeing v. Shipman.  We now turn to address the question of the sufficiency of the evidence.

B

(1)

Under Texas law, the tort of intentional infliction of emotional distress requires that MacArthur must prove 1) Painter acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of Painter caused MacArthur emotional distress, and 4) the resulting emotional distress was severe. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993).  The sole issue that Painter raises on appeal is whether his conduct toward's MacArthur was "extreme and outrageous."

Liability under this cause of action is imposed only "where the conduct has been so outrageous in character, and so extreme in

_____

[9]Even if we did not excuse Painter's failure to comply with Rule 50(b) and thus reviewed this case under the plain error standard, our conclusion would be no different than that which we reach here, except we would be required to go through the futile exercise of remanding this case for a new trial.  See Purcell v. Seguin State Bank and Trust Co., 999 F.2d 950 (5th Cir. 1993) (holding unexcusable failure to make motion for judgment as matter of law results in review under plain error standard and relief limited to ordering new trial).  We find the record devoid of any evidence establishing that Painter acted "outrageously"--as this term of art is used in the relevant cases--towards MacArthur.  Thus no evidence supports the jury's verdict against Painter for intentional infliction of emotional distress.

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Wornick Co. v. Casas, 856 S.W.2d 732, 734 (Tex. 1993)(quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d. (1965)). The cause of action does not protect against mere insults, indignities, and threats. Johnson v. Merrell Dow Pharmaceuticals, Inc., 965 F.2d 31, 33 (5th Cir. 1992). In the employment context, a claim for intentional infliction of emotional distress will not be supported by the broad range of conduct labeled as "mere employment disputes." Johnson, 965 F.2d at 33. "In order to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer and discipline employees." Johnson, 965 F.2d at 34.

Our decision in Dean v. Ford Motor Credit Co., 885 F.2d 300 (5th Cir. 1989) is instructive as to the type of conduct that rises to the level of "extreme and outrageous" in the employment context. In Dean, the plaintiff presented evidence that her supervisor intentionally placed checks in her purse to make it appear that the plaintiff was a thief, or to put her in fear of criminal charges for theft of the checks. Dean, 885 F.2d at 307. We held that the "check incidents...[were] precisely what [took] this case beyond the realm of an ordinary employment dispute and into the realm of an outrageous one." Id. Similarly, in Wilson v. Monarch Paper Co., 939 F.2d 1138 (5th Cir. 1991), the plaintiff presented evidence of the defendant's outrageous conduct by showing that he

-18-

was a former executive whom defendant company sought to humiliate into resigning because of his age by forcing him to perform routine janitorial duties before and in behalf of his fellow employees. Wilson, 939 F.2d at 1145. We noted that various other conduct complained of by the plaintiff, as offensive as it may have been, was within the "realm of an ordinary employment dispute." Id. at 1144-45. We held, however, that in attempting to totally humiliate the former executive by requiring him to perform janitorial services and to clean up after lower level employees was the outrageous conduct that took this case "out of the realm of an ordinary employment dispute." Id. at 1145.

(2)

We turn now to examine the evidence to determine whether a reasonable juror could conclude that Painter's conduct was outrageous. MacArthur argues exactly the same evidence supporting her Title VII retaliation claim to support her claim for intentional infliction of emotional distress. MacArthur contends that Painter acted outrageously by making unfounded accusations that she had sabotaged one of his experiments conducted in an incubator. See supra p. 4. Furthermore, she argues that he threatened to charge her with scientific misconduct after finding that she had used her own blood in an experiment she was performing, when she may have been infected with hepatitis. See supra p. 4 n.2. Finally, she argues that Painter exercised substantial control over the committee that suspended her radiation

privileges, a disciplinary response that MacArthur argues was greatly exaggerated as compared that imposed for other radiation errors. See supra p. 3. In sum, she contends that evidence of Painter's "prolonged intentional, malicious and vindictive career threats" proved not only the "discriminatory intent" needed to prevail on her Title VII retaliation claim, but also the "outrageous conduct" necessary to support her intentional infliction of emotional distress claim. See supra, pp. 3-5.

In connection with each of these individual incidents--the incubator incident, the blood incident, and the radiation disposal incident--MacArthur carelessly or incompetently performed her task. For example, with regard to the incubator incident, MacArthur adjusted the pace on the machine, which ultimately ruined Painter's experiment. Again, MacArthur was careless, if not reckless, in using her own blood for an experiment when she was concerned that she may be infected with hepatitis. Finally with regard to the radiation disposal incident, she erroneously disposed of the radiation, and incompetently performed experiments using the radiation, resulting in the indefinite suspension of her radiation privileges. MacArthur hardly contends that she was without fault in each of these incidents; instead, she argues that Painter's manner of reprimand constituted outrageous conduct. In response to each incident involving MacArthur's carelessness or incompetence, Painter had a plausible basis to become upset with MacArthur's conduct. Painter may have lost control, behaved intemperately,

rudely reprimanded her or overreacted in reporting her mistake to her supervisor, but the evidence does not demonstrate conduct and actions so unjustifiable, so uncivilized, so based on malice, or so senselessly destructive of another that it rises to the level of "outrageous conduct" as that term relates to and describes the cause of action for intentional infliction of emotional distress. Accordingly, we reverse and render judgment in favor of defendant Painter.

IV

In sum, we hold that MacArthur abandoned her Title VII retaliation claim by failing to argue or present it to the jury. As to the jury's verdict on the claim of intentional infliction of emotional distress, we REVERSE and RENDER judgment in favor of defendant Painter. For the foregoing reasons, the judgment of the district court is

DISMISSED in part and REVERSED and RENDERED in part.