**Walter NORRIS, Jr.**

v.

**HOUSING AUTHORITY OF THE CITY OF GALVESTON, et al.**

**Civil Action No. G–96–459.**

United States District Court,
S.D. Texas,
Galveston Division.

April 18, 1997.

John Edward Eckel, Mills Shirley Eckel & Bassett, Galveston, TX, Barbara Elliott Roberts, City of Galveston, Office of City Attorney, Galveston, TX, for The City of Galveston, TX.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

In this case, Plaintiff brings claims against multiple Defendants for violations of his rights under sections 1981, 1983, and 1985 of Title 42 of the United States Code, and state-law claims for breach of contract and intentional infliction of emotional distress. Now before the Court is Defendant City of Galveston's Motion for Summary Judgment of January 21, 1997. For the reasons set forth below, Defendant's Motion is **GRANTED.**

### I. FACTUAL BACKGROUND

Plaintiff became the Executive Director of the Housing Authority of the City of Galveston ("GHA") on April 14, 1988 and had an employment contract that extended his employment until June 30, 1999. On July 15, 1996, however, Plaintiff was terminated from his position based on charges of mismanagement, fraud, and criminal activity. As a result of this termination, Plaintiff sued GHA, the Board of Commissioners of the GHA ("Board"), the Galveston Redevelopment and Community Enterprise Corporation, the City of Galveston, and Marc Cuenod, Christine Keller, and Alfreda Houston, who were Commissioners on the Board.

Plaintiff claims that he was terminated from his position as Executive Director of GHA and deprived of his rights by Defendants in this case for attempting to decentralize the location of mostly minority public housing. Specifically, Plaintiff claims that as Executive Director, he was advised that one of his responsibilities and duties, and one of the goals of GHA, was to decentralize low-income public housing in Galveston by placing it in areas that were predominantly white. Plaintiff claims that the Board and the Mayor of the City of Galveston at some point changed their position on this issue and decided that they did not favor decentraliza-

Johnetta Strange Cooper, Gordon R. Cooper, II, Cooper & Cooper, Houston, TX, for Walter Norris, Jr.

Sam G. Tramonte, Robert E. Bastien, Tramonte Tramonte & Bastien, Galveston, TX, for Housing Authority of the City Galveston, Board of Commission, Galveston Redevelopment and Community Enterprise Corp., Marc Cuenod, Christine Keller, Alfreda Houston.

tion. To give effect to this policy shift, Plaintiff claims the City used its power of appointment to appoint persons to the Board who supported its new position. Specifically, Plaintiff alleges that the Mayor of Galveston appointed Christine Keller, Marc Cuenod, and Alfreda Houston, the three individuals herein sued, to the Board for the purpose of preventing decentralization. After their appointment, the Board majority called for an audit of GHA and of Plaintiff himself. After an audit and investigation by an outside firm and a public hearing at which Plaintiff responded to the charges against him, Plaintiff was terminated from his position on charges of fraud, mismanagement, and criminal activity pursuant to a clause in his employment contract, that allowed for his termination for misfeasance, nonfeasance, or conduct that is detrimental to the best interests of GHA.

Plaintiff claims that the charges of fraud and mismanagement against him "were false and tantamount to a pretext for illegal deprivation of Plaintiff's legally protected rights and an interference with his duties." (Plaintiff's First Amended Complaint, p. 5). Plaintiff further alleges that Defendants participated in an unlawful conspiracy to stop or prevent the desegregation of public housing in the City of Galveston. Plaintiff's specific claims against Defendant City of Galveston, whose Motion for Summary Judgment is now extant before the Court, are: deprivation of contractual rights, equal protection and/or privileges and immunities secured to him by law; conspiracy to deprive him of his constitutional and statutory right to make and enforce his contract and to enjoy all the benefits and conditions of his contract with the Board; deprivation of his right to enforce his contract and enjoy the benefits and conditions of the contractual relationship he had with the Board; and intentional infliction of emotional distress. Defendant City of Galveston seeks summary judgment on all these claims on the grounds that the City has and had no interest in or control over the governance of GHA and had no control over any personnel decisions made regarding Plaintiff.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Issues of material fact are genuine only if they require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). To meet this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)). Summary judgment should be granted only if the evidence indicates that a reasonable fact-finder could not find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## III. DISCUSSION

■ Plaintiff attempts to place liability for the wrongs allegedly done him at the feet of Defendant City of Galveston on the grounds that because the Mayor, as presiding officer of the City, has the power to appoint Com-

missioners to the Board of GHA, the acts of the Board represent official policy of the City. The Court finds this reasoning ill-conceived and unpersuasive. It is undisputed that the Mayor of the City has the power to appoint Commissioners to the Board of GHA. TEX. LOC. GOV'T CODE ANN. § 392.031 (Vernon Supp.1996). The mere fact that the Mayor has the power to appoint Commissioners to the Board, however, does not make the City liable for all acts accomplished by the Board. While the Mayor may undoubtedly appoint Commissioners who share with him or her similar philosophical, political, or social ideologies, the Mayor has no control over the Commissioners' decisionmaking once they are appointed. GHA is an autonomous body politic made up of a Board of autonomous individuals. The Mayor no more controls the decisionmaking of the GHA Board than the President does the federal judges he appoints. The mere fact that the Mayor may favor a certain position and express his views in the press or in private about what direction he or she thinks GHA should go is insufficient to hold the Mayor, and therefore the City, liable if GHA actually goes that direction. This Court is unwilling to impute liability for an appointed official's action to the elected official who appointed him to the City whom the elected official represents. The causal leap is simply too far.

In this case, there is simply no evidence that the City, through the Mayor or otherwise, interfered with Plaintiff's rights. The City undeniably had no control over the audit, investigation, and eventual termination of Plaintiff from his position of employment. Plaintiff's employment contract was with the Board, and there is no evidence to suggest that the City interfered with this contract, Plaintiff's rights under it, or any of Plaintiff's other rights. Rather, it appears that the Board became unsatisfied with Plaintiff, initiated an investigation into his conduct, charged him with fraud and mismanagement, and terminated him after a public hearing at which he was given a chance to defend his actions. Whether or not this process was conducted fairly and with due process is not now relevant because the City had nothing to do with the process. In sum, Plaintiff has simply failed to establish a connection be-

tween his termination and the City. The facts that the Mayor made statements in the press about GHA and appointed the Commissioners who eventually discharged Plaintiff are threads incapable of sewing together Plaintiff's claim against the City. Therefore, all of Plaintiff's claims against Defendant City of Galveston are **DISMISSED WITH PREJUDICE.**

■ The Court also sua sponte **DISMISSES WITH PREJUDICE** Plaintiff's claims for intentional infliction of emotional distress against all Defendants herein. The Court, in preparing this Order, extensively reviewed the pleadings and briefs in this case and found no facts that would support a claim for intentional infliction of emotional distress against any of the Defendants. Plaintiff has not specifically alleged exactly which Defendants and what acts caused him emotional distress but rather intimates that the totality of the situation distressed him. The Court finds that the facts as alleged simply do not invoke the high standard required to maintain a claim for intentional infliction of emotional distress.

■ To prevail on a claim for intentional infliction of emotional distress under Texas law, a plaintiff must prove four elements: (1) that the defendant acted intentionally or recklessly; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's actions caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was severe. *Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir.1993) (citing *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1989)). To be considered "outrageous," conduct must surpass "all bounds of decency" such that it is "utterly intolerable in a civilized community." *Id.* (citation omitted). Liability for intentional infliction of emotional distress does not extend to "mere insults, indignities, threats, annoyances, or petty oppressions." *Id.* (citation omitted). The Court finds no conduct on the part of any of the Defendants that rises to the level of being utterly intolerable in a civilized society. The Court frankly finds no

evidence of even mere insults or petty oppressions on the part of Defendants.

The investigation into Plaintiff and his eventual termination were in all probability stressful and unpleasant to Plaintiff but were not of a proper character to support a claim for intentional infliction of emotional distress. The Fifth Circuit has repeatedly held that a claim for intentional infliction of emotional distress will not lie for mere "employment disputes." *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33 (5th Cir. 1992). The conduct at issue here falls within the broad range of what constitute "employment disputes." The Board had the power to evaluate Plaintiff's work performance and discharge him if it concluded that his performance was unsatisfactory under the terms of his employment contract. By definition, this process would involve criticism and negative comments about Plaintiff's conduct, and Plaintiff cannot recover damages for that criticism. As the Fifth Circuit has stated, "[i]n order to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer and discipline employees. Not all of these processes are pleasant for the employee." *Id.* at 34. While these processes may not be pleasant, they do not make up a claim for intentional infliction of emotional distress. Defendants cannot be held liable for merely exercising their job duties in evaluating Plaintiff and terminating him. Therefore, Plaintiff's claims for intentional infliction of emotional distress against all Defendants are **DISMISSED WITH PREJUDICE.**

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED.** Plaintiff's claims against Defendant City of Galveston are **DISMISSED WITH PREJUDICE.** Plaintiff's claims for intentional infliction of emotional distress against all Defendants are also **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file nothing further on these issues in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

While the Court is not prejudging this action, it notes that it does have serious concerns about the vitality of Plaintiff's remaining claims. The Court notes that Plaintiff's claims regarding racial discrimination in public housing seem improperly brought by Plaintiff because he is not, to this Court's knowledge, a resident of public housing and has no ability to assert the rights of those that are. Therefore, the Court **ORDERS** the parties to file dispositive motions on all the remaining issues within thirty (30) days of the date of this Order. Responses to the motions shall be due within twenty (20) days of the date of the filing of the motions. No replies will be permitted or required. No page limit is set on the motions or responses, but they should be as concise and succinct as possible. Attachments to such motions and responses should also be as brief and excerpted as possible.

**IT IS SO ORDERED.**

### *PARTIAL FINAL JUDGMENT*

For the reasons set forth in the Order issued by the Court this date, Defendant City of Galveston's Motion for Summary Judgment is **GRANTED.** Plaintiff's claims against Defendant City of Galveston are **DISMISSED WITH PREJUDICE.** Plaintiff's claims against all Defendants for intentional infliction of emotional distress are likewise **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**THIS IS A PARTIAL FINAL JUDGMENT.**