Connie GROGAN, Plaintiff

v.

SAVINGS OF AMERICA, INC., a subsidiary of Home Savings of America FSB, Defendant

No. CIV.A. H–98–569.

United States District Court,
S.D. Texas,
Houston Division.

April 7, 1999.

744

Daniel David Kistler, Houston, TX, for Connie Grogan, plaintiff.

Teresa S Valderrama, Baker & Botts, Houston, TX, for Savings of America Inc, a subsidiary of Home Savings of America FSB, defendant.

### MEMORANDUM AND ORDER

HARMON, District Judge.

Pending before the Court in the above referenced action, removed from state court on diversity grounds and alleging age discrimination and harassment in employment, in violation of Section 21.051 of the Texas Labor Code, defamation/slander, and intentional infliction of emotional distress, is Defendant Home Savings of America, Inc.'s [1] motion for summary judgment (instrument # 22).

The movant seeking a federal summary judgment initially must inform the court of the basis for its motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that it is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.,* 812 F.2d 219, 222 (5th Cir.1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which she bears the burden of proof at trial. Fed.R.Civ.P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party may not rest on mere allegations or denials in her pleadings but must produce affirmative evidence and specific facts. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. She meets this burden only if she shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254, 106 S.Ct. 2505. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), citing *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Once the burden of proof has

---

1. Defendant is a federally chartered financial institution.

shifted to the non-movant, she "must do more that simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. Instead she must produce evidence upon which a jury could reasonably base a verdict in her favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.,* 477 U.S. at 249–50, 106 S.Ct. 2505. Unsubstantiated and subjective beliefs and opinions are not competent summary judgment evidence. *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The non-movant cannot discharge her burden by offering vague allegations and legal conclusions. *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Defendant's motion for summary judgment insists that the material facts here are undisputed. In the process of moving to a new sales culture in 1996 because of the need as a savings institution to compete with banks that are now selling competitive financial products and trying to generate business,[2] after providing extensive sales training to the employees, Defendant explains that it discharged Plaintiff Connie Grogan, a long-time branch manager, because she refused to embrace the new culture as demonstrated by repeated deficiencies in significant aspects of her job. Defendant maintains that em-

ployees may be required to meet changed standards. *Blackwell v. Cole Taylor Bank,* 152 F.3d 666, 671–72 (7th Cir.1998) (no age discrimination occurred where a bank required its branch managers to become sales managers with specified sales goals); *Davis v. First Nat'l Bank of Killeen,* 976 F.2d 944, 949 (5th Cir.1992) (no age discrimination where bank was purchased and underwent "drastic policy and philosophy changes"). Furthermore, Defendant charges, Plaintiff Connie Grogan has provided no evidence that her age played any role in her discharge. Grogan has conceded that she was terminated for "unsatisfactory performance"[3] and replaced by an employee only two years younger than herself. Furthermore, she admitted that the pressure, or what she has characterized as "harassment," was put on all branch managers; during her deposition, Plaintiff testified as follows about her reaction to the new, nondiscriminatory emphasis on sales skills:

A. . . . All branches had goals, all branches were, you know, talked to. It was a constant meeting the expectations of our goals. . . . The pressure that was brought on me was naturally to meet my goals . . . it was a pressure that was given, you know, to make your managers meet their goals . . . .

Q. Weren't all employees, all branch managers, pressured to meet their goals?

A. Yes, yes. I didn't say that they weren't. We all were.

Q. Whether they were under 40 or over 40?

A. Yes.

---

**2.** During her deposition, Plaintiff admitted the change and stated "that's where we were moving to . . . it's understood that that's banking today, is sales." Grogan Dep. at 182, Ex. C to Defendant's motion for summary judgment.

**3.** Grogan Dep. at 342. Although Plaintiff later attempts to get around this admission,

Defendant insists that she may not controvert her sworn testimony by an unexplained affidavit. *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 495 (5th Cir.1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment by using an affidavit that impeaches, without explanation, [his own] sworn testimony.").

Q. Who put the pressure on you to meet your goals?

A. Well anywhere [*sic*] from Lee [Stallings] to California. I mean, you know. everybody was doing their job.

Q. Okay.

A. Passing down. I was putting pressure on my staff. You know, we were all doing that.

Q. So, it was legitimate for the company to pressure its employees to meet its goals.

A. And it was understandable.

Ex. C, Grogan Dep. at 206–07. The deposition also demonstrates that Grogan was not meeting her sales goals. "[W]e were not at our goal, but, you know, we weren't the worst, but we weren't meeting the goals." *Id.* at 212. She also admitted that Home Savings replaced her with fifty-one year old Linda Parkey, who was only "two years younger than me." *Id.* at 261.

Defendant, with supporting documentary evidence, details Plaintiff's disruptive conduct and her failure to learn new sales skills, to complete required assignments, and to accept the new sales culture. It further demonstrates her deteriorating job performance, including a four-day unexcused absence and disciplinary counselings and warnings.

Finally, Plaintiff called in sick because she did not wish to meet with Larry Andrews, Defendant's new Group Sales Director, as scheduled on August 7, 1996. Ex. C to Defendant's motion for summary judgment, Grogan Dep. at 271 ("I felt very stressed, and I didn't really want to meet with Mr. Andrews with how I felt."); Ex. A to Defendant's motion for summary judgment, Tracey Gargan[4] Aff. par. 9. Plaintiff did not return to work, but remained on "stress leave" for nearly six months on full salary. She also cleaned out her office in early August 1996. She claimed that she suffered anxiety attacks whenever she considered returning to work and experienced 5–6 such attacks. She did not take any medicine, but obtained a physician's excuse to stay home. "It was like I felt relieved... [that] I wasn't going to be forced into the unpleasant situation of being terminated." Ex. C, Grogan Dep. at 273–74. After Plaintiff provided a note from her doctor stating that she was well and able to return to work, Plaintiff was discharged on January 21, 1997 "for behavior that continues to demonstrate a resistant, borderline, insubordinate attitude toward embracing and managing the new sales culture." Ex. C, Grogan Dep., Ex. 15; Lee Stallings[5] Aff. par. 11; Gargan Aff., Ex. A at par. 11. According to her deposition testimony, at 107 and 273, she has not had any anxiety attacks since and believes she is emotionally stable. Defendant's stated reasons for her discharge are her August 1996 failure to appear for her meeting with Andrews, her failure to prepare required materials for a visit by Carl Forsythe, Home Savings' National Sales Director, her failure to follow company procedures, resulting in poor leadership for branch employees, and disruptive comments during a sales training seminar in February 1996, including a refusal to learn effective listening skills.

Furthermore, argues Defendant, Plaintiff's claim for defamation, which is based on allegations that some of her friends and former customers were told that she had suffered a nervous breakdown, is time barred, is defective because the statements she complains about are true, and lacks any evidentiary support to demonstrate that the statements were made by or attributable to Defendant.

Moreover, insists Defendant, Plaintiff's claim for intentional infliction of emotional distress must also fail because she complains of a garden-variety employment dis-

---

**4.** Tracey Gargan was Home Savings' Regional Operations Manager and assisted Lee Stallings in his supervision of Connie Grogan during 1996.

**5.** Stallings was Regional Manager and supervisor of Plaintiff from 1994 until her discharge on January 21, 1997.

pute and because nothing about her discharge is extreme or outrageous.

■■■ The Texas Commission on Human Rights Act ("TCHRA"), Section 21.051 of the Texas Labor Code provides in relevant part, "An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin or age the employer ... discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment ...." In enacting the TCHRA, the Texas Legislature intended to correlate "state law with federal law in the area of discrimination in employment." *Gold v. Exxon Corp.*, 960 S.W.2d 378, 380 (Tex.App.—Houston [14th Dist.] 1998, no writ).[6] Thus the same burden-shifting framework used to analyze a case under the federal discrimination statutes applies under the Texas statute. *Id.* The case law developed under Title VII governs claims under the TCHRA. *Texas Dep't of Human Services v. Hinds*, 904 S.W.2d 629, 636 (Tex.1995). TCHRA's express purpose is "the execution of the policies embodied in Title VII." *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483,

485 (Tex.1991); Texas Labor Code Ann. § 21.001(1). Therefore courts interpret the TCHRA consistent with federal law. *Leatherwood v. Houston Post Co.*, 59 F.3d 533, 536 n. 5 (5th Cir.1995); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex.1996).

Summary judgments are appropriate in age discrimination cases where Plaintiff fails to carry her burden of demonstrating discriminatory treatment. *See, e.g., Bodenheimer v. PPG Indus.*, 5 F.3d 955 (5th Cir.1993); *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir.), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

■■■ As noted, the same evidentiary procedure for allocating burdens of proof applies to discrimination claims under the ADEA and under Title VII, and the TCHRA. *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir.1995); *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 957 n. 4 (5th Cir.1993). In a suit for age discrimination, the plaintiff must first establish by a preponderance of the evidence a *prima facie* case of discrimination.[7] If the plaintiff succeeds, the *prima*

---

**6.** Plaintiff concedes that Section 21.125 became effective after she filed her claim and that it is not applied retroactively. Act of May 24, 2993, 73rd Leg., R.S. ch. 276, §§ 5, 8, 1993 Tex. Gen. Laws 1285, 1288, 1292 (current version at Tex. Labor Code Ann. § 21.125 (Vernon 1996)). Nevertheless, she cites *Gold*, 960 S.W.2d at 384 n.4, for her contention that it is meant as "clarifying" legislation and provides the appropriate standard to establish an age discrimination claim.

**7.** To establish a *prima facie* case of intentional age discrimination, a plaintiff must show that (1) she was discharged; (2) she was qualified for the position; (3) she was within a protected class (over the age of forty) at the time of the discharge; and (4) she was either replaced by someone younger, or otherwise discharged or discriminated against because of her age. *Bodenheimer*, 5 F.3d at 957. The United States Supreme Court has made clear that, in assuming that the evidentiary burden of *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817, applies to an ADEA case, the fact that an ADEA plaintiff was replaced by some-

one outside the protected class is not a proper element of a *prima facie* case under the ADEA. *O'Connor v. Consolidated Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). While only those forty years or older are protected by the ADEA, it prohibits age discrimination against them not on the basis of class membership but on age. Thus if one member of the class loses out to another member of the class, that fact is irrelevant as long as the first lost out because of her age. *Id.* Or, as the Court noted, there is no greater inference of age discrimination when a forty-year-old loses out to a thirty-nine-year-old than when a fifty-six-year-old loses out to a forty-year old. *Id.* Instead the Court looked at a more reliable indicator, i.e., whether the plaintiff was "substantially" older than the replacement employee. *Id.* Courts have held that a five-year difference between an employee and her replacement is insufficient as a matter of law to show that the replacement is substantially younger than the plaintiff and to create an inference of discrimination. *Cramer v. Intelidata Techs. Corp.*, No. 97–2775, 168 F.3d 481, 1998 WL

*facie* case raises a presumption of discrimination. The defendant must then articulate and produce some evidence that the discharge was based on a legitimate, nondiscriminatory reason. The defendant is not required to prove that it was actually motivated by these proffered reasons, nor must it demonstrate an absence of discriminatory motive. If the employer succeeds, the plaintiff must then prove by a preponderance of the evidence that the reasons are pretextual and that the discharge was motivated by intentional age discrimination. In *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989 (5th Cir.1996) (*en banc*), the Fifth Circuit held that a plaintiff in an ADEA disparate treatment case must offer evidence to rebut each of the employer's articulated reasons for its action. The Fifth Circuit stated that in conjunction with the *prima facie* case, that rebuttal would often allow a finding of discrimination without additional evidence to avoid summary judgment if the evidence, taken as a whole, creates a fact issue about actual motivation and creates a reasonable inference that age was a determinative factor in the adverse employment decision. *Id.* at 994. Nevertheless if that evidence taken as whole would not allow a jury to infer that the actual reason for the discharge was age discrimination, the employer would not be entitled to summary judgment. *Id.* For instance, if one of the employer's reasons is questionable, that fact may not suffice to cast doubt on the remaining reasons. *Id. See also EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir.1996). Although the burden of production shifts, the plaintiff always retains the ultimate burden of persuasion that there is a nexus between her termination and her age. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502–12, 514–20, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Odom v. Frank*, 3 F.3d 839, 850 (5th Cir.

1993). While age does not have to be the only reason for an adverse employment decision, it must be a factor in the employer's decision and have a determinative influence on the outcome. *Woodhouse v. Magnolia Hospital*, 92 F.3d 248, 252 (5th Cir.1996).

In an untimely response,[8] Plaintiff notes that during the more than twenty-three years that she worked for Defendant and its predecessor, Buffalo Savings, she worked her way up from an assistant's position to branch manager and was twice named one of its "best of the best," an award granted each year to the outstanding branch managers of Home Savings' regions. At her termination she was fifty-three years old and had been a branch manager for over twenty years. She claims that during the last months of active employment she and other longer tenured and older branch managers were singled out for selective enforcement of certain goals that none of Defendant's branches was meeting. She asserts that she was subjected to constant harassment from supervisors making threats of imminent termination if the goals were not met. Only after her discharge, indeed not until January 23, 1998 and in some instances not until the summer of 1998, did she learn that Defendant was informing people that Plaintiff had suffered a nervous breakdown or "was screwed up in the head."

Plaintiff insists that she has presented a *prima facie* case of age discrimination. She was fifty-three years old at the time of her discharge, she had been a branch manager for over twenty years, she was involuntarily terminated, and she was replaced by Linda Parkey, who was fifty-one years old. She submits an affidavit in which she identifies fourteen branch managers and one regional manager of Home Saving's

911735, at *3 (4th Cir. Dec.31, 1998); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998). This Court concludes that two years is not a substantial difference justifying an inference of age discrimination.

8. Defendant's motion for summary judgment was filed on February 12, 1999, while Plaintiff's response was not filed until March 9, 1989.

sister entity, Griffin Financial Services, who were over forty and allegedly held the same position as Grogan except for the regional manager, who had extensive seniority with Home Savings, and who also lost their jobs within the period of a year. She argues that Linda Parkey's assumption of Gogan's job in the Bellaire branch was a lateral transfer for Parkey from the NASA branch. Another manager had to be placed in Parkey's NASA job, but that transfer left the Little York branch without a manager. Plaintiff contends a man in his twenties, Verdin Turnbull, was recruited to fill that third position as branch manager of the Little York branch. Plaintiff maintains this distant replacement is direct evidence of age discrimination. She argues that Home Savings deliberately did not directly promote Turnbull to fill her job because such a direct replacement would establish the last element of a *prima facie* case of age discrimination.

■ Plaintiff then argues that Defendant's articulated reasons for her termination are inadmissible as a matter of law. She explains that after her termination, she filed for unemployment benefits with the Texas Workforce Commission. Home Savings then challenged her right to receive unemployment benefits under Section 207.044 of the Texas Labor Code because of alleged misconduct in her employment. The Commission, however, found in Plaintiff's favor. Home Savings appealed, but the ruling was upheld and became final. Plaintiff maintains that *res judicata* and collateral estoppel apply to final rulings from administrative agencies. *Harrison v. Gemdrill Int'l*, 981 S.W.2d 714, 718 (Tex.App.—Houston [1st Dist.] 1998); *Coalition of Cities for Affordable Utility Rates v. Public Utility Comm'n of Texas*, 798 S.W.2d 560 (Tex.1990), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991). Federal courts must give a state agency's decision the same preclusive effects to which it would be entitled in the state's court. *United States of America v. State of Texas*, 158 F.3d 299, 304 (5th Cir.1998). Plaintiff contends that the final ruling of the Commission precludes Defendant's claim that it had nondiscriminatory reasons for terminating Plaintiff. Moreover, she argues, Plaintiff's affidavit challenges these articulated, nondiscriminatory reasons, raising genuine issues of material fact for trial.

■ Plaintiff objects to Defendant's evidence, affidavits of Tracy Gargan and H. Lee Stallings, as "replete with opinions and hearsay." Specifically in paragraph 5 of her affidavit, Gargan testifies to an unsupported, unsubstantiated and unambiguous opinion from an interested witness. In paragraph 6, Gargan testifies to events during a seminar without indicating if Gargan was present. In paragraph 11 Gargan presents her personal beliefs and feelings, which Plaintiff dismisses as irrelevant and incompetent evidence from an interested witness. Plaintiff characterizes paragraph 4 of Stallings' affidavit as being argumentative and constituting a nonexpert opinion from an interested witness. Paragraph 5, Plaintiff insists, is hearsay because to become "aware" of the events he testifies to, he had to hear of them from someone else. Paragraph 11 contains irrelevant beliefs of Stallings, incompetent as summary judgment evidence, according to Plaintiff.

Defendant replies, and this Court agrees, that the affidavit testimony is competent and admissible because each affidavit states that it is based on the personal knowledge of the affiant and the "opinions" are statements about Defendant's reasons for terminating Plaintiff. *Aucutt v. Six Flags*, 85 F.3d 1311, 1317–18 (8th Cir.1996)(decisionmaker's affidavit admissible because based on personal knowledge of the employer's reasons for the decision to discharge plaintiff).

As for her defamation claim, she presents an affidavit from Mahmoud "Moe" Olya, a former customer of Plaintiff's at Home Savings, as direct evidence of defamation. She notes, in regard to Home Savings' limitations defense, that Olya's affidavit states that the defamatory com-

ments were made to him before limitations had expired, but that Plaintiff was not informed of them until later, well after January 23, 1997. She maintains that the discovery rule applies to these defamation claims, so limitations does not begin to run until Plaintiff learns of or should have learned of the defamatory statement. *Kelley v. Rinkle,* 532 S.W.2d 947, 949 (Tex. 1976). Grogan Deposition at p. 121, 1. 24; p. 131, 1. 23–p. 132, 1.6. She states that comments that Grogan learned of earlier in January 1997 were made between company employees or former company employees, but that these publications are not the basis of her slander claim. Grogan Deposition at p. 135, 1.4; p. 140, 1. 21.

■ As for Home Savings' defense that its statements that Plaintiff had suffered a nervous breakdown or was "screwed up in the head" contained substantial truth or were a statement of opinion, Plaintiff disagrees that in *Randall's Food Markets v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995), the stated standard under Texas law for defamation is that Home Savings knew or should have known that the statements were false; she claims such a standard applies only to an employer's assertion of qualified investigative privilege,[9] which can be defeated by a showing of malice, i.e., knowledge of the falsity of the statement or reckless disregard for its truth or falsity. That privilege is not available to Home Savings here, Plaintiffs states.

Noting that *Steadman's Medical Dictionary* defines "nervous breakdown" as a "nonmedical term for an emotional or mental illness; often a euphemism for a psychiatric disorder," Plaintiff complains that most people would understand the comment, which was accompanied by the gesture of circling one finger around the temples, as meaning she was crazy, rather than suffering from stress or depression. Therefore she insists the statements were not true in any respect. She also contends that the substantial truth doctrine generally applies to the media in defamation cases. Plaintiff argues that the trier of fact needs to make the decision whether the statements were more damaging in the mind of an ordinary listener than a truthful statement would have been. She also contends that accusing her of having had a nervous breakdown is not an expression of an opinion, but a direct accusation that most ordinary people would find outrageous.

Plaintiff argues that sufficient evidence demonstrates that the defamatory statements were made by two Home Savings' employees in the business establishment during regular business hours in the course of serving a Home Savings' customer to attribute the statements to Home Savings and impose vicarious liability on the corporate employer. *Cotton Belt R.R. v. Hendricks,* 768 S.W.2d 865, 870 (Tex. App.—Texarkana 1989, no writ)(to prevail on a defamation claim against a corporate employer, the plaintiff must show that the defamatory publication was made by an employee in the course and scope of the declarant's employment); *Cf. Wagner v. Caprock Beef Packers Co.,* 540 S.W.2d 303, 304 (Tex.1976).

Finally, Plaintiff insists that the cases cited by Home Savings, to support its defense that the statements are not actionable because they were only unauthorized gossip, are not on point. Grogan states that she is not complaining of idle gossip at a baby shower, but of employees telling

---

9. In a slander lawsuit, an employer has a conditional or qualified privilege that attaches to communications it made in the course of investigation after a report of employee wrongdoing. This privilege remains in place as long as communications pass only to individuals having interest or duty in the matter to which the communications relate. The privilege can be defeated by proof that the statement was motivated by actual malice existing at the time of publication, i.e., that it was made with knowledge of its falsity or with reckless disregard as to its truth. *Randall's Food Markets,* 891 S.W.2d at 646. There is no claim by Defendant in the instant case that it made the communications during investigation of wrongdoing by Plaintiff.

customers on the Teller Line that she had suffered a nervous breakdown.

As for her claim of intentional infliction of emotional distress, she points to the harassment up until her discharge, the constant threats of imminent discharge, and Home Savings' challenge without cause or justification to her receipt of unemployment benefits as constituting intentional infliction of unbearable psychological pressure with the intent to compel her resignation. Several months of therapy demonstrate that the distress was severe, she maintains. Moreover, Plaintiff insists that this is more than an ordinary employment dispute, as evidenced by her list of fifteen other managers in the same or similar circumstances who were either fired or who resigned near the time of Grogan's adverse job action. She also disputes Home Savings' contention that by 1996 she had $120,000 in consumer debt. The debt referred to in the partial transcript submitted by Home Savings was debt on bankruptcy schedules in a case she filed more than one year after she went on medical leave from Home Savings.

Home Savings has filed a reply, arguing that Plaintiff's age discrimination claim still fails for three reasons: (1) she presents no evidence that she was treated differently because of her age; (2) her repeated difficulties with Defendant's shift to a new sales culture during the first half of 1996, as evidenced by undisputed conflicts with management, constitute an unrebutted, legitimate, nondiscriminatory reason for discharge; and (3) her opinion that the conflicts she undisputedly experienced were insignificant does not satisfy her burden to show pretext.

Defendant also insists that Plaintiff's state-law tort claims do not defeat summary judgment either. Her defamation claim fails because the disputed statements are either true or matters of opinion, were not made within the scope and course of employment, and because they are barred by limitations. Her claims also reflect only a garden variety employment dispute that does not constitute intentional infliction of emotional distress.

■ Furthermore, Defendant maintains that the findings of the Texas Workforce Commission have no collateral estoppel effect and are not admissible evidence in this action under the statute's express command. Tex. Lab.Code Ann. § 213.007 ("A finding of fact, conclusion of law, judgment, or final order made under this subtitle [Collateral Estoppel Doctrine Inapplicable] is not binding and may not be used as evidence in an action or proceeding ... even if the action or proceeding is between the same or related parties or involves the same facts.").[10] This Court agrees. *See*

---

10. A person is ineligible to receive unemployment compensation benefits if "he has been discharged for misconduct connected with his last work." Tex.Rev.Civ. Stat. Ann. art. 5221b–3 (Vernon 1987). Defendant contends that a finding by the Commission that Plaintiff was not guilty of "misconduct" does not establish that Plaintiff adequately performed her job. Because of the humanitarian purpose of the unemployment compensation statutes, "misconduct" requires a showing of "wrongful intent, bad faith, or wanton disregard of the employer's interests." *City of Dallas v. Texas Empl. Comm'n*, 626 S.W.2d 549, 551 (Tex.App.—Texarkana 1981) (employee may violate employer's rule without being guilty of "misconduct"). An employee may fail to meet performance standards, a legitimate, nondiscriminatory reason for the employee's discharge, and yet have committed no "misconduct." "The issue [before the

Commission] is the employee's entitlement to benefits under the provisions of a beneficent statute. Conduct constituting good cause for termination of employment does not necessarily equate with conduct disqualifying one from the benefits of that statute. *Id.*

The Court notes that *City of Dallas* is no longer good law because the Texas Legislature changed the statute and redefined what constitutes "misconduct" and eliminated the "wanton, willful or deliberate" requirement. *Haas v. Texas Employment Comm'n*, 683 S.W.2d 462 (Tex.App.—Dallas 1984, no writ). Under Texas Revised Civil Statute Annotated article 5221b–17(q) (1984), misconduct is now defined as "mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, intentional wrongdoing or malfeasance, intentional violation of law, or

*Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 150 (5th Cir.1996)[11]; *Comeaux v. Uniroyal Chemical Corp.*, 849 F.2d 191, 194 (5th Cir.1988) (holding that finding in state unemployment compensation proceeding that black employee had not violated safety rule prior to his discharge did not have collateral estoppel effect in employee's subsequent Title VII action as to issue of whether termination was for legitimate, nondiscriminatory reasons).[12]

In addition, Defendant contends, none of Plaintiff's arguments raises an inference of discriminatory intent. For a *prima facie* case, Plaintiff must show that she was replaced by an employee outside the protected class or that Plaintiff was treated differently because of her age. *Mayberry v. Vought Aircraft*, 55 F.3d 1086, 1090 (5th Cir.1995) (a plaintiff not replaced by employee outside protected class may establish discrimination by comparison, i.e., by showing that younger employees in "nearly identical" circumstances were treated differently); *Blackwell v. Cole Taylor Bank*, 152 F.3d 666, 672 (7th Cir.1998) ("[I]n the absence of direct evidence of discrimination, [a *prima facie* case is made] by showing that a younger worker was treated better than an older worker who was qualified to do the work in question.").

Plaintiff was replaced by a woman about the same age as she was. Her contention that the lateral transfer of two employees within the protected class to locations nearer to their homes[13] was based on age

---

violation of a policy or rule adopted to ensure orderly work and safety of employees, but does not include an act of misconduct that is in response to an unconscionable act of an employer or superior." Nevertheless, Defendant's reasoning still applies.

11. The Fifth Circuit explains that in Texas Labor Code § 213.007, and its predecessor Tex.Rev.Stat. Ann. art. 5221b–9(r), the Texas legislature denied benefits determinations preclusive effect because

"[t]he adjudication process under the Texas Employment Compensation Act is geared to the disposal of a large number of cases in an expeditious manner." Report by the Texas House Comm. on Labor and Employment Relations, H.B. 813 (March 26, 1991). Further, "[t]he mere possibility that collateral estoppel will be applied has the potential for bogging down the appeals process under the Texas Unemployment Compensation Act by protracted litigation where further litigations is contemplated in other forums involving the same facts and parties." *Id.*

*Atkinson*, 84 F.3d at 150.

12. In *Comeaux*, 849 F.2d at 194, the Fifth Circuit wrote in relevant part,

In a state unemployment compensation proceeding, the Louisiana Board of Review had determined that Comeaux had not violated a safety rule and so was eligible to receive unemployment compensation benefits following his termination by Uniroyal. Prior to trial on his employment discrimination claim, Comeaux filed a motion for "res judicata, judicial estoppel, and equitable estoppel" on appellee's claim that it had terminated his employment for legitimate, nondiscriminatory reasons. It is elementary that for either res judicata or issue preclusion to apply, the cause, claim, or issue before the second proceeding must have either been litigated in the first proceeding or be one that legally should have been raised there.

It is clear that the unemployment compensation proceeding neither considered, nor had occasion to consider, whether Uniroyal terminated Comeaux's employment for legitimate, nondiscriminatory reasons. The fact that the state board held that Comeaux did not violate a safety rule does not mean that Uniroyal could not properly have concluded that he had done so, or that it could not legitimately decide to terminate his employment on the basis of his overall safety record. Even if Uniroyal had erroneously concluded that appellant violated a safety rule on August 6, 1982, it would not follow that its determination to terminate appellant's employment was based upon improper racial considerations. This lawsuit does not litigate the general issue of whether there was or was not "good cause" for appellant's discharge. The only issue is whether the discharge was racially motivated. We conclude that the court did not abuse its discretion by denying appellant's motion for res judicata and collateral estoppel.

13. Ex. D to reply, Linda Moorehead (formerly Linda Parkey) Aff. at ¶ 2–3; Ex. e, Rebecca Thurston Affidavit at ¶ 2–3. Defendant asserts that these transfers were for the employees' personal convenience, not because of age,

discrimination is a tortured effort to fit them within the *prima facie* construct, insists Defendant. Defendant maintains that Plaintiff has not produced any evidence that she was treated differently than younger employees. Instead, she has testified that *all* employees faced pressure to meet the sales goals, pressure that she characterizes as "harassment." Grogan Dep. at 206–07. Therefore no evidence raises an inference of age discrimination. Furthermore, although Plaintiff tries to provide such evidence by arguing that she was essentially replaced by a younger employee because her lost position had to be filled by two lateral transfers, one to fill Plaintiff's vacated position and the other to fill the position of Plaintiff's replacement, and the resulting promotion of a young man to fill the last position, the Fifth Circuit rejected a similar attempt in *Hamilton v. Grocers Supply Co., Inc.*, 986 F.2d 97, 99 (5th Cir.1993) (correct analysis is not selection of replacements but treatment of other similarly situated younger employees). Plaintiff has offered no evidence that the younger employee who became a branch manager, in a different branch,[14] engaged in conflicts similar to those relating to Plaintiff's termination.

Plaintiff's list of other older employees that have left Home Savings, without evidence of evidentiary significance of such departures to her case, will also not preclude summary judgment insists Defendant. She provides no statistical analysis. *Sample v. Aldi, Inc.*, 61 F.3d 544, 551 (7th Cir.1995) (evidence that employer terminated a statistically disproportionate number of African Americans was not relevant to "individual claims because [plaintiff] had not shown any link between the alleged discrimination and the employment decisions which [plaintiff] was challenging"); *Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994) ("mere absence of minority employees in upper-level positions does not suffice to prove a *prima facie* case of discrimination without a comparison to the relevant labor pool"); *Campbell v. Fasco Indus., Inc.*, 861 F.Supp. 1385, 1393 (N.D.Ill.1994)(statistics regarding employee departures meaningless "[w]ithout evidence of why these employees left"), *aff'd*, 67 F.3d 301 (7th Cir.1995).

Defendant emphasizes that Plaintiff has not rebutted its legitimate, non-discriminatory reasons for her discharge. Even her present affidavit concedes the occurrence of each of the incidents that it has designated as a reason for her termination. Instead she tries to diminish the significance of each incident. Defendant further argues that courts defer to an employer's business judgment. *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 566–67 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984); *Mayberry*, 55 F.3d at 1091 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). In *Elliott*, no plaintiff disputed "the objective truth of the company's stated ground for dissatisfaction with him, only that it was inadequate to warrant his termination." *Id.* Defendant argues that Plaintiff's case is no different: she may disagree whether the incidents that occurred were adequate reasons for termination, but neither she nor the courts may substitute their business judgment for the employer's. *EEOC v. Louisiana Office of Comm. Servs.*, 47 F.3d 1438, 1443 (5th Cir.1995) ("the trier of fact may not disregard the defendant's explanation without countervailing evidence that it is not the real reason for discharge"). Plaintiff did speak out at a sales seminar, did fail to show up for work without calling in, did not have all required materials for a Vice President's visit, and failed to attend a meeting with her new Group Sales Director. Grogan

---

as evidenced by their supporting affidavits. Plaintiff fails to demonstrate otherwise.

**14.** "It is not discrimination to treat differently situated persons differently." *Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 373 (5th Cir. 1997).

Aff. at 2–3; Grogan Dep. at 205, 214–16, 231–32, 271. These were the reasons for Plaintiff's discharge,[15] and she cannot create a fact issue by suggesting that her employer took them too seriously. *Elliott,* 714 F.2d at 566.

Defendant further observes that an employee who performs well under one regime can have difficulty performing under a new set of standards. *Davis v. First Nat'l Bank of Killeen,* 976 F.2d 944, 949 (5th Cir.1992) (that plaintiff worked without criticism for two years not dispositive of his performance under a new regime), *cert. denied,* 508 U.S. 910, 113 S.Ct. 2341, 124 L.Ed.2d 251 (1993).

■ Defendant insists that Plaintiff has provided no admissible evidence of pretext. While she argues that Home Savings' reason for her discharge is not credible, a plaintiff's subjective disagreement about her employer's assessment of her abilities does not establish pretext. *Waggoner v. City of Garland,* 987 F.2d 1160, 1164 (5th Cir.1993); *Bodenheimer,* 5 F.3d at 959. In the Fifth Circuit a plaintiff must raise a triable fact issue as to both the employer's stated reason for discharge and a reasonable inference that age motivated the employer's decision. *Walton,* 119 F.3d at 370. Her subjective disagreement with the reasons does not meet this standard. *Bodenheimer,* 5 F.3d at 959 (ignoring self-serving affidavits conclusorily claiming that plaintiff had better qualifications; plaintiff must submit evidence that is comparative in nature); *Molnar v. Ebasco Constr., Inc.,* 986 F.2d 115, 119 (5th Cir.1993)(reversing verdict where employee's alleged qualifications were established only by employee's own testimony). Nor does her speculation about the transfer of branch managers after her discharge, discussed *supra,* demonstrate pretext.

Noting that the defamatory nature of a statement is a question of law for the Court,[16] Defendant also charges that Plaintiff provides no evidence to support her claim of defamation. Defendant reiterates that the statements were opinions or truths, for which a cause of action for defamation does not lie. The statements explaining her absence as due to psychiatric problems qualify as both opinion and truth. Each is a lay person's effort to explain in an unscientific manner Plaintiff's long absence because of emotional problems or a mental or nervous condition. During her deposition, Plaintiff admitted to a six-month absence for unspecified emotional difficulties. Grogan Dep. at 116–17, 144–45.

Nor, argues Defendant, has Plaintiff offered any evidence that the statements were made by employees within the course and scope of employment for purposes of vicarious liability. Plaintiff is in error in claiming that this element is satisfied if the opinions are made in a business establishment of Home Savings during regular business hours in the course of serving a Home Savings' customer. If she were not, every statement made in the workplace would be attributable to the employer. *Wagner v. Caprock Beef Packers Co.,* 540 S.W.2d 303 (holding that employee who, while on the business premises of employer, called prospective employers of plaintiff and made allegedly defamatory statements, was not acting within the course and scope of employment). The employee's act must be in furtherance of the employer's business and within the employer's agency. An unidentified bank teller's personal impression regarding Plaintiff's mental health is not a communication that furthers Home Savings' business interests and clearly is not part of a teller's job. Gargan Aff. ¶ 3–4; *Danawala v. Houston Lighting & Power Co.,* 14 F.3d

---

**15.** Grogan Dep. Ex. 15; Stallings Aff. ¶ 11; Gargan Aff. ¶ 11, attached as Exhibits C, A, and B respectively to Defendant's motion for summary judgment.

**16.** *Schauer v. Memorial Care System,* 856 S.W.2d 437, 447 (Tex.App.—Houston [1st Dist.] 1993, no writ).

251, 254 (5th Cir.1993) (employer cannot be held responsible for unauthorized gossip spread by unidentified employees); *Marshall Field Stores v. Gardiner*, 859 S.W.2d 391 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.). The only employees authorized to respond to questions regarding employees on leave of absence were those in Home Savings' human resources department. Gargan Aff. ¶ 4. Because· the statements and the gesture at issue were not authorized by Home Savings nor in furtherance of the work of the unidentified tellers who allegedly made these statements, Defendant argues, these acts were outside the course and scope of employment and cannot be attributed to Home Savings for liability for defamation.

 Moreover, Defendant reiterates that limitations bars the defamation claims. Plaintiff now says the statute should be tolled because Olya did not inform her of the defamatory statements until the summer of 1998—ironically six months after she sued for defamation in the instant action. Furthermore, since the discovery rule is a plea in avoidance that Plaintiff failed to plead timely in her original petition or in an amended petition in response to Defendant's affirmatively raising the statute of limitations as a defense, she therefore waived it and cannot now claim the benefit of it. *Dickson Construction Inc. v. Fidelity and Deposit Co. of Maryland*, 960 S.W.2d 845, 850 (Tex. App.—Texarkana 1997, no pet.), *citing Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex.1988). Moreover, the discovery rule only tolls the running of limitations until the plaintiff discovers or through the exercise of reasonable care and diligence should have discovered the nature of her injury. *Cornerstones Municipal Utility District v. Monsanto Co.*, 889 S.W.2d 570, 576 (Tex.App.—Houston [14th Dist.] 1994, writ denied). The discovery rule only applies to cases where the nature of the injury is latent and inherently undiscoverable. *Bayou Bend Towers Council of Co-Owners v. Manhattan Construction Co.*, 866 S.W.2d 740, 743 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Defendant insists that statements made while Plaintiff was on disability leave in 1996 were discoverable by Plaintiff before the summer of 1998—especially since Plaintiff filed this suit in January 1998 with the express belief that something defamatory had been said about her.

 Finally Defendant asserts that this is an ordinary employment dispute for which a claim for intentional infliction of emotional distress will not lie. *Thompson v. City of Arlington, Texas*, 838 F.Supp. 1137, 1154 (N.D.Tex.1993). The Fifth Circuit has held that constant criticism and threats of discharge are not extreme and outrageous as a matter of law. *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33–34 (5th Cir.1992) (applying Texas law). Even wrongful termination is not extreme and outrageous. *Southwestern Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex.1998). Thus Defendant argues that summary judgment for Defendant on this claim is also warranted.

 After reviewing the record and the applicable law, the Court concurs with Defendant that Plaintiff has failed to meet her burden of demonstrating a *prima facie* case of age discrimination because she fails to satisfy the last element. She has not shown that she was replaced by someone substantially younger than she, nor that she was discharged or discriminated against or treated differently than younger employees because of her age.

 Even if she had, Defendant has met its burden of articulating and supporting legitimate, nondiscriminatory reasons for Plaintiff's discharge. Defendant's evidence has shown that Plaintiff, herself, conceded that she was dismissed for "unsatisfactory performance." Grogan Dep. at 342. Defendant has also produced evidence that Plaintiff has admitted that everyone was equally pressured to adapt to the new sales culture regardless of age and that she was replaced by a woman of

51, who was only two years younger than Plaintiff (Dep. at 206–07, 261).

Finally, Plaintiff has failed to show that Defendant's reasons for her termination were pretextual and that the decision was actually motivated by age discrimination.

■ Nor has Plaintiff demonstrated "severe and pervasive" age harassment sufficient to "create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). As Defendants note, she has not even alleged that she was ever threatened physically or humiliated or subjected to offensive utterances. Rather, she conceded that Defendant and her immediate supervisor were reasonable to pressure her and all the other branch managers to meet the company's new sales goals. Grogan Dep. at 206–07, 225. "Normal job stress does not constitute a hostile or abusive work environment." *Trujillo v. Univ. of Colo. Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir.1998).

■ To prevail on a claim of defamation, a plaintiff must show that the defendant published false and defamatory statements about her to third persons without legal excuse. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.1995). The plaintiff must show that the defendant knew or should have known that the alleged statements were false. *Id.* Truth of the challenged statements is an absolute defense in a slander suit brought by private individuals. *Id.* Indeed, a showing of substantial truth of the statements defeats such a cause of action. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex.1990). To be actionable, a statement must be a factual assertion; expressions of opinion are not actionable. *Schauer v. Memorial Care Sys.*, 856 S.W.2d 437, 447 (Tex.App.—Houston [1st Dist.] 1993, no

writ). Moreover, a one-year statute of limitations applies to defamation claims, with a claim accruing when the words are spoken and the injury occurs. Tex. Civ. Prac. & Rem.Code Ann. § 16.002 (Vernon 1998); *Ross v. Arkwright Mutual Ins. Co.*, 892 S.W.2d 119, 131 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Martinez v. Hardy*, 864 S.W.2d 767, 774 (Tex.App.—Houston [14th Dist.] 1993, no writ).

■ This action was filed on January 23, 1998. Plaintiff's deposition testimony (at 126, 132, 137, 141, 146, and 292) demonstrates that all statements of which she complains were made *prior* to her discharge on January 21, 1997 and that none was made subsequent to discharge. Moreover, as noted by Defendant, her original petition, paragraph VIII, makes the factual allegations supporting her defamation claim. Therefore Plaintiff cannot claim that the discovery rule tolled the statute of limitations until the following summer for the information she relies on in Olay's affidavit. Her cause of action for defamation is time-barred. Furthermore, her global, conclusory allegations that it was Home Savings that disclosed to her friends and others that she had a nervous breakdown are unsupported by competent evidence. She has failed to show that such statements were made by Home Savings' employees in the course and scope of employment so as to impose liability on Home Savings.

■ To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show the (1) the defendant acted intentionally and recklessly, (2) that the defendant's conduct was extreme and outrageous, (3) that the Defendant's actions caused the plaintiff emotional distress, and (4) that the emotional distress suffered by the plaintiff was severe. *MacArthur v. Univ. of Tex. Health Ctr. at Tyler*, 45 F.3d 890 (5th Cir.1995); *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir.1989) (applying Texas law), cited in *Ugalde*, 990 F.2d at 243. *See also Twyman v. Twyman*, 855 S.W.2d 619, 621–22

(Tex.1993). Conduct is, "outrageous" if it surpasses "all bounds of decency" such that it is "utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46, comment d). Mere insults, indignities, threats, annoyances or petty oppressions do not constitute outrageous conduct. *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir.1991). Whether conduct is "extreme and outrageous" is a question of law for the court, appropriate for resolution on summary judgment. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993). Mere employment disputes do not amount to intentional infliction of emotional distress. *MacArthur v. University of Texas Health Center at Tyler*, 45 F.3d 890, 898 (5th Cir.1995); *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33 (5th Cir.1992). Such a claim in an employment context would lie only in the most unusual case. *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir.1994).

■ As a matter of law the Court concludes that the conduct Plaintiff has alleged against Defendant was not extreme and outrageous, beyond all bounds of decency, or utterly intolerable in a civilized community, but merely an ordinary employment dispute that does not rise to the level of intentional infliction of emotional distress.

Accordingly, because Plaintiff has failed to satisfy her burden of proof on all claims, the Court

ORDERS that Defendant's motion for summary judgment is GRANTED and final judgment shall issue by separate instrument.